ROBBIE L. JOHNSON, A MINOR, BY AND THROUGH HIS MOTHER
AND NEXT FRIEND, LYNN JOHNSON, APPELLEE, V.
SCHOOL DISTRICT OF MILLARD, A POLITICAL SUBDIVISION OF
THE STATE OF NEBRASKA, APPELLANT.

573 N.W.2d 116

Filed January 2, 1998.    No. S-96-401.

Brien M. Welch, of Cassem, Tierney, Adams, Gotch & Douglas, for appellant.

Michael A. Nelsen and, on brief, Kenneth P. Kula, of Dixon & Jessup Ltd., L.L.P., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

WRIGHT, J.

The plaintiff commenced this negligence action pursuant to the Nebraska Political Subdivisions Tort Claims Act, alleging

that the defendant, through its employee, was negligent in that the employee failed to properly supervise students who were under her care. The defendant appeals from an award to the plaintiff in the amount of $21,226.10.

## SCOPE OF REVIEW

In actions brought pursuant to the Political Subdivisions Tort Claims Act, the findings of the trial court will not be disturbed on appeal unless they are clearly wrong, and when determining the sufficiency of the evidence to sustain the judgment, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in favor of such party, and it is entitled to the benefit of every inference that can reasonably be deduced from the evidence. *Scholl v. County of Boone*, 250 Neb. 283, 549 N.W.2d 144 (1996).

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Id.*

## FACTS

On September 15, 1993, Robbie L. Johnson, a first grader at Willa Cather Elementary School, was injured while attending his music class. On this day, the teacher of the music class, Nancy Patton, taught her class the song and accompanying game of "London Bridge." London Bridge is a game in which two children, while singing a song, form a "bridge" by linking their arms. The children's linked arms are then lowered around a third child who is rocked back and forth. The children were taught how to sing the song, and then the teacher used two children to demonstrate how the accompanying game was played. The teacher picked two children at random and instructed them to link their arms together, explaining that they were to rock a third child within their linked arms. The teacher warned the children not to act silly and told them not to yell, scream, or swing their arms too much. After giving these instructions, the teacher allowed the children to play the game on their own. It was undisputed that this was the first time the students had played the game and that Johnson was the first child who was caught and rocked between the children's linked arms.

Johnson testified that he was swung "fast and hard" while caught in his classmates' arms. While swinging Johnson, the

two children accidentally released their hands and threw Johnson into a bookcase at the end of the room, cutting his head above his right eyebrow. Johnson testified that he told the children swinging him to stop at least three times and asked for help twice before the accident occurred. He testified that he was trying to yell over the music, but everyone was talking, and some of the children were laughing and singing.

It is undisputed that the teacher was not watching Johnson when he was injured. Johnson testified that the teacher was writing on the blackboard, and he and another student testified that she had her back to the children when the accident occurred. The teacher testified that she saw Johnson caught within the children's arms but did not witness him being swung because she was aiding another child.

Johnson required 50 stitches to close the cut above his right eye. The cut extended to the bone and divided the muscle throughout its length. Johnson suffered blurred vision for a short period of time and continues to suffer headaches as a result of his injury.

The trial court held that the teacher's mere instruction to first grade children on how to play the game without direct supervision during at least the early portions of the game was negligent supervision. The court found that as a result of the accident, Johnson sustained an injury and damages, and awarded him $1,226.10 for medical expenses, $15,000 for permanent disfigurement, and $5,000 for pain and suffering. The School District of Millard appeals from the judgment.

## ASSIGNMENTS OF ERROR

Summarized and restated, the school district asserts that the trial court erred (1) in holding the school district to a standard of care that required direct supervision of a nondangerous activity, rather than the standard of care of an ordinary prudent person; (2) in finding the school district negligent without requiring the use of expert testimony or other evidence to show that the school district was negligent; and (3) in finding that the school district's negligence proximately caused Johnson's injury.

## ANALYSIS

The school district argues that we should reverse the judgment of the trial court because the court failed to give proper weight to the testimony of the teacher, the only adult that testified, and therefore made findings of fact which are clearly wrong. In a bench trial of a law action, the court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Nelson v. Metropolitan Utilities Dist.*, 249 Neb. 956, 547 N.W.2d 133 (1996). This court will not reweigh the testimony or reevaluate the credibility of the witnesses, but it will review the evidence to determine whether the trial court made findings which are clearly wrong.

The school district asserts that the trial court was clearly wrong in relying upon Johnson's testimony, since some of the estimates given by him appear to be in error. Johnson testified that his classmates swung him violently for 3 minutes before the accident occurred and that he was off the ground for 10 seconds before hitting the bookcase. In contrast, another student and the teacher testified that the incident occurred in 5 seconds or less, and the teacher testified that the London Bridge song takes only 7 to 12 seconds to sing.

Although Johnson's estimate regarding the length of time he was off the ground is not possible, we cannot say that the trial court was clearly wrong in relying upon other aspects of his testimony. The court's determination of liability was not based upon Johnson's estimate of how long he was off the ground before striking the bookcase and was not based upon his estimate of how long he was swung by his classmates before the accident. Liability was predicated on the court's finding that the teacher was in the blackboard area with her back to Johnson at the time of the accident, that Johnson was swung "fast and hard" by his classmates, and that this was the first time the children had played London Bridge in class. The court found that under these circumstances, the teacher was negligent in failing to directly supervise the students during at least the early portions of the game and in failing to stop the aggressive swinging of Johnson. The court found that under all of the attendant circumstances, the accident and injury were foreseeable, and that the negligence of the teacher was the proximate cause of

Johnson's injury. Thus, the school district's claim that the court improperly weighed the evidence and made findings of fact which are clearly wrong is without merit.

Likewise, the school district's claim that the trial court gave too much weight to Johnson's testimony is without merit. In a bench trial, the court, as the trier of fact, is the sole judge of the weight to be given the testimony. See *id.* Thus, we will not review the amount of weight which the trier of fact gave to either the teacher's or Johnson's testimony.

The proper standard of care regarding negligent supervision is whether the defendant acted as a reasonably prudent person would in a similar circumstance. See *Hearon v. May*, 248 Neb. 887, 540 N.W.2d 124 (1995). The trial court found that the teacher was negligent in not directly supervising the children during at least the early portions of the game. The question is whether the teacher had a duty to directly supervise her students at this time.

The school district argues that the trial court incorrectly required the teacher to provide direct supervision, which imposed a higher standard of care than that of a reasonably prudent person. The cases cited by the school district imply that constant supervision of students at all times is not required by a teacher acting as a reasonably prudent person and that direct supervision is needed only when children are engaged in dangerous activities. See, *Narcisse v. Continental Ins. Co.*, 419 So. 2d 13 (La. App. 1982); *Clark v. Furch*, 567 S.W.2d 457 (Mo. App. 1978); *Simonetti v. School Dist. of Philadelphia*, 308 Pa. Super. 555, 454 A.2d 1038 (1982); *Ballard v. Polly*, 387 F. Supp. 895 (D.D.C. 1975). By analogy, the school district argues that since London Bridge is not a dangerous activity, the court should not have required the teacher to provide constant and direct supervision.

We conclude that the trial court did not require the teacher to provide constant and direct supervision because the court's order states that the teacher needed to provide direct supervision to the children during only the "early portions of the game." The court did not hold the teacher to a higher standard of care than that of a reasonably prudent person. Instead, the court found that a reasonably prudent person would have given

direct supervision to first graders during at least the early portions of a game which they were playing for the first time. We cannot say that the trial court was clearly wrong.

The school district claims that the teacher would not have had enough time to assist Johnson even if she had supervised him more closely and that, therefore, she is not responsible for Johnson's injury. We disagree. The trial court found that the teacher was in the blackboard area with her back to Johnson just prior to the injury and that Johnson did not trip and fall into the bookcase, but, rather, was propelled by the "fast and hard" swinging of the two children composing the bridge. The court found that Johnson told his classmates to stop and cried for help before the accident. The court found that the teacher was negligent in failing to stop the aggressive swinging by the two students making up the bridge and that this negligence was the proximate cause of Johnson's injury. As each of these findings is supported by the evidence, we cannot say that the trial court was clearly wrong.

We next address whether the school district's negligence was the proximate cause of Johnson's injury or whether the act of the other children constitutes an intervening cause which defeats causation. There are three basic requirements that must be met to establish causation: (1) that "but for" the defendant's negligence, the injury would not have occurred; (2) that the injury is the natural and probable result of the negligence; and (3) that there is no efficient intervening cause. *World Radio Labs. v. Coopers & Lybrand*, 251 Neb. 261, 557 N.W.2d 1 (1996). The school district argues that the act of Johnson's classmates, who released their hands and propelled Johnson into the bookcase, is an intervening cause which defeats causation.

In order for the children's accidentally releasing their hands to be an intervening cause, this court must find that the children's act was unforeseeable. See *Haselhorst v. State*, 240 Neb. 891, 485 N.W.2d 180 (1992). We conclude that it is reasonably foreseeable that children playing London Bridge might swing another child in such a manner that the sudden release of their hands could cause an accident. Therefore, the fact that the children released their hands and caused Johnson to hit his head is not an intervening cause.

Finally, the school district argues that the trial court erred in determining liability without the use of expert testimony regarding the teacher's standard of care. Neb. Evid. R. 702, Neb. Rev. Stat. § 27-702 (Reissue 1995), states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion or otherwise."

Scientific evidence is not needed to understand whether the teacher was negligent when she failed to watch a group of first graders play a game for the first time. There is nothing technical or scientific about a common children's game such as London Bridge. Accordingly, an expert witness would have been of little use to the trier of fact. The trial court was not clearly wrong when, without the use of expert testimony, it found that the teacher was negligent and that her negligence was a proximate cause of Johnson's injury.

## CONCLUSION

Finding all of the school district's assignments of error to be without merit, we affirm the judgment of the trial court.

AFFIRMED.