BRIDGETTE A. ANDERSON, BY AND THROUGH HER MOTHER,
CINDY ANDERSON/COUVILLON, APPELLEE AND CROSS-APPELLANT,
v. NEBRASKA DEPARTMENT OF SOCIAL SERVICES,
APPELLANT AND CROSS-APPELLEE.

572 N.W. 2d 362

Filed January 23, 1998.   No. S-96-181.

Don Stenberg, Attorney General, and Royce N. Harper for appellant.

Michaelle L. Behrns and, on brief, Steven D. Burns, of Burns & Associates, P.C., for appellee.

CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

This State Tort Claims Act case between the plaintiff-appellee herein, Bridgette A. Anderson, by and through her mother, Cindy Anderson/Couvillon, and the defendant-appellant, Nebraska Department of Social Services, is before us for the second time. On the first occasion we, among other things, affirmed the district court's summary judgment in favor of Anderson on the issue of liability, but reversed the district court's award of damages to her in the amount of $348,341.83 because of an error in the admission of certain evidence upon which it had relied. *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732 (1995) (*Anderson/Couvillon I*). Following a new trial on the sole issue of damages, the district court awarded Anderson the sum of $448,341.83; the department appealed, and the mother cross-appealed. Each asserts, in summary, that the district court erred in (1) excluding certain evidence and (2) assessing the amount of damages. We affirm.

## II. FACTS

At the new trial on the issue of damages, the district court admitted the evidence from the original trial, except for that held inadmissible in *Anderson/Couvillon I*. At the original trial, Drs. Melvin Canell, Mona Pothuloori, and Jeff Melvin agreed that Anderson suffered from posttraumatic stress disorder. The major disagreement among them related to Anderson's prognosis; it was noted by Pothuloori that Anderson had not made hoped-for improvement, and Pothuloori described Anderson as being of a high risk of not recovering.

At the new trial, Canell testified that Anderson "has in some ways regressed from the original time that I had seen her." He

testified further that the sexual molestation of Anderson had significantly reduced her educational capacity. Canell described her as being "non-competitive, oppositional, doesn't concentrate very well, has difficulty in immediate recall, has difficulty in interpersonal relationships. . . . [A]ll of those factors would contribute to somehow hamper her abilities in school at any level." He was not sure that "she would complete high school," and he did not think that Anderson would fare well in college. Given her current level of development, he doubted that she would even apply for college.

Based on Canell's educational evaluation, the mother offered the testimony of Dr. Robert Johnson, a business and finance professor, to the effect that the level of education one acquires affects lifetime earning capacity. Johnson presented his calculations of the present value of the loss of earning capacity for Anderson resulting from both her projected failure to earn a high school diploma and her presumed inability to acquire a college degree. However, the district court rejected Johnson's testimony, concluding that without evidence that Anderson was considering college, such evidence was too speculative.

The department called Dr. Eli Chesen, a psychiatrist. Based upon his examination of Anderson and review of the examinations and therapy notes provided by several sources, including Pothuloori and Melvin, he testified that while Anderson has "some fears and problems," he did not "see any evidence of [posttraumatic] stress disorder." He also testified that Anderson might "very well be" a malingerer.

The district court awarded Anderson $5,141.83 for medical expenses, $43,200 for past and future counseling, and $400,000 for pain and suffering and general damages, plus costs.

### III. ANALYSIS OF DEPARTMENT'S APPEAL

#### 1. EXCLUSION OF EVIDENCE

In the first assignment of error, the department asserts that the district court wrongly struck certain testimony and improperly refused to permit the department to elicit certain other testimony. In reviewing this assignment of error, we are bound by the rule that in proceedings where the rules of evidence apply, the admission of evidence is controlled by rule and not by judi-

cial discretion, except where judicial discretion is a factor involved in assessing admissibility. *Allphin v. Ward, ante* p. 302, 570 N.W.2d 360 (1997).

The only testimony by Chesen that was stricken related to his answer to the question posed by the department asking: "And in reaching that observation did you consider all of the records, including the original police reports, and doctors' reports and other information that was furnished you? [Answer:] Yes. And I thought they were helpful."

The mother objected without stating a ground and moved to strike the answer after the word "yes." The district court ordered that portion of the answer stricken. The stricken portion of Chesen's answer was not responsive and thus properly stricken. See *Mindt v. Shavers*, 214 Neb. 786, 337 N.W.2d 97 (1983) (not error to deny motion for mistrial where spontaneous, unresponsive portion of answer was stricken and jury was instructed to disregard stricken portion).

Next, the department urges that the district court wrongly prevented Chesen from answering the question, "Doctor, when you are evaluating someone in your ordinary practice for what appears to be [posttraumatic] stress, do you in making your evaluation use the GAF?" The record does not make clear whether GAF refers to a measurement designated as the "global assessment score" or to some other measurement dealing with global functioning. In any event, the district court sustained the mother's objection to this question on the ground that as Chesen found no posttraumatic stress symptomology, whether he used a particular scale was meaningless. The department now argues that this ruling was an abuse of discretion because it prevented the department from refuting the mother's evidence, symptom by symptom.

But the department misapprehends the basis of the district court's ruling. The court did not rule that any attempt by Chesen to relay the symptoms which influenced his diagnosis was irrelevant, merely that the question of whether he used a particular test was not relevant.

Lastly, the department argues that it should have been able to ask Chesen about the extent to which Anderson had been sexually molested. It argues that the district court was in error in

concluding that such questions were foreclosed by our decision in *Anderson/Couvillon I.* While the bill of exceptions establishes that the district court considered the issue thus foreclosed, we need not consider the correctness of its ruling in that regard, for the bill of exceptions contains no offer of proof establishing that, if wrong, the ruling prejudiced the department.

Error may not be predicated upon a ruling of a trial court excluding testimony of a witness unless the substance of the evidence to be offered by the testimony was made known to the trial judge by offer or was apparent from the context within which the questions were asked. *Cockrell v. Garton,* 244 Neb. 359, 507 N.W.2d 38 (1993); Neb. Evid. R. 103(1)(b), Neb. Rev. Stat. § 27-103(1)(b) (Reissue 1995). In order to predicate error upon a ruling of the court refusing to permit a witness to testify, or to answer a specific question, the record must show an offer to prove the facts sought to be elicited. *Slocum v. Hevelone,* 196 Neb. 482, 243 N.W.2d 773 (1976).

In the absence of an offer of proof, the question becomes whether the substance of the evidence was apparent from the context within which the question was asked and whether the evidence would have been material and competent. *State v. Fonville,* 197 Neb. 220, 248 N.W.2d 27 (1976).

It is not clear from the record how Chesen's perception of the molestation affected his diagnosis. Neither is it clear that the district court would not have allowed the direct question, How did your knowledge and opinion as to the extent of the molestation affect your diagnosis? Nor is it clear what Chesen's answer would have been had the question been asked. Under this state of the record, the department has no basis to argue that it was prejudiced by the district court's ruling.

For the foregoing reasons, there is no merit to this assignment of error.

### 2. ASSESSMENT OF DAMAGES

In connection with the second assignment of error, the department contends that the amount of damages awarded is so excessive as to "shock the conscience" and that the district court merely relabeled the hedonic damages held to be not recoverable in *Anderson/Couvillon I* as recoverable for pain and suffering. We review the issues presented by this assignment

under the rule that on questions of law, a reviewing court has the obligation to reach its own conclusions independent of those reached by the lower courts. *Fales v. Books, ante* p. 491, 570 N.W.2d 841 (1997). However, on an appeal from a judgment rendered in an action brought under the State Tort Claims Act, Neb. Rev. Stat. § 81-8,209 et seq. (Reissue 1987 & Cum. Supp. 1990), the findings of the trial court will not be disturbed unless clearly wrong. *Brown v. State*, 205 Neb. 332, 287 N.W.2d 676 (1980).

It is true that when a cause is remanded with specific directions, the court to which the mandate is directed has no power to do anything but to obey the mandate. The order of the appellate court is conclusive on the parties, and no judgment or order different from, or in addition to, that directed by the appellate court can be entered by the trial court. *Smith-Helstrom v. Yonker, ante* p. 189, 569 N.W.2d 243 (1997); *Xerox Corp. v. Karnes*, 221 Neb. 691, 380 N.W.2d 277 (1986).

We wrote in *Anderson/Couvillon I* that "while consideration of loss of the enjoyment of life may properly be considered as it relates to pain and suffering, and to disability, it is improper to treat it as a separate category of nonpecuniary damages." *Id.* at 664, 538 N.W.2d at 741. Thus, the district court's judgment in *Anderson/Couvillon I* was reversed because it was predicated in part on the existence of hedonic damages.

The department argues that contrary to the district court's finding that Anderson's condition has worsened since the original trial, statements by Canell that Anderson "is behaving, so far as I know, predictable based probably upon what has happened to her" and that "[s]he's done, frankly, what I expected she would" are evidence that her condition had not worsened.

However, such a position is not supported by the record. In fact, Canell's testimony conveys a very consistent impression that Anderson is not progressing as he had earlier hoped. His statements include:

> And the response to that individual has not been as therapeutically good as I would have expected.
>
> Many children her age respond . . . in a much more fruitful manner. [Anderson] hasn't. And so she's in the sub-population of children who have experienced trauma

and have simply not profited a great deal from the best efforts that have been made so far.

. . . .

. . . She's somewhat worse than I would have expected.

The question, "And then your testimony here today is basically that they have the same problems [as at the original trial] but they are worse" elicited the response that Anderson "is substantially worse. . . . [W]hat I see in a global pattern is that [Anderson] is a great deal worse . . . ."

It is clear, however, that the district court did not rely solely on Canell's testimony at the second trial in increasing the amount of damages. In Pothuloori's testimony in the first trial, she expressed the hope that 2 to 3 years of therapy would enable Anderson to regain some of her functioning and that she would stabilize. Pothuloori had noted in the original trial that Anderson had already been in therapy for 1½ to 2 years and that children often can make a limited recovery in 4 to 5 years. But she also had expressed the concern that Anderson is a person who is of a high risk of not recovering. Given that background, Canell's testimony takes on added significance, as he noted that Anderson "has in some ways regressed from the original time that I had seen her." That is to say, Anderson had regressed at the end of the period in which it had been hoped that she would have significantly advanced.

This was the evidence the district court considered when it noted in its order that Anderson's situation

is worse than the Court contemplated at the time of the original judgment entered in this case. The evidence is clear that she has not made any strides in dealing with the situation, and the situation as described by [Pothuloori], which she described as a difficulty to discuss the assault has come to pass.

An award of damages may be set aside as excessive or inadequate when, and not unless, it is so excessive or inadequate as to be the result of passion, prejudice, mistake, or some other means not apparent in the record. *Crewdson v. Burlington Northern RR. Co.*, 234 Neb. 631, 452 N.W.2d 270 (1990). If an award of damages shocks the conscience, it necessarily follows that the award was the result of passion, prejudice, mistake, or

some other means not apparent in the record. See *id*. However, the amount of damages is a matter solely for the fact finder, whose action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of damages proved. *Schuessler v. Benchmark Mktg. & Consulting*, 243 Neb. 425, 500 N.W.2d 529 (1993).

Given the evidence adduced at the new trial concerning the nature of Anderson's condition, we cannot say the district court's award is so excessive as to shock the conscience. Therefore, this assignment, too, is without merit.

## IV. ANALYSIS OF MOTHER'S CROSS-APPEAL

### 1. EXCLUSION OF EVIDENCE

In her first assignment of error, the mother asserts that the district court incorrectly rejected Johnson's testimony.

We have held that damages for permanent impairment of future earning capacity may not be based on speculation, probabilities, or uncertainty, but must be shown by competent evidence that such damages are reasonably certain as the proximate result of the pleaded injury. *Uryasz v. Archbishop Bergan Mercy Hosp.*, 230 Neb. 323, 431 N.W.2d 617 (1988).

The questions concerning loss of future earnings for failure to complete high school and for failure to complete college must be analyzed separately because there is different testimony concerning each. While the district court's order focused only on college, because Johnson's testimony established definite independent damages if a high school diploma is not obtained, the question of whether his testimony should have been admitted solely on the question of damages resulting from a lack of high school education must also be examined.

The only evidence concerning Anderson's ability to complete either high school or college is Canell's testimony. As to high school, his comments were limited to, "I'm not sure that she would complete high school." Although there was no relevancy objection to Canell's statement, his lack of certainty nonetheless bears on the weight his testimony should be given in this regard. In reviewing a judgment awarded in a bench trial, an appellate court does not reweigh evidence but considers the judgment in the light most favorable to the successful party.

*Ohnstad v. Omaha Public Sch. Dist. No. 1*, 232 Neb. 788, 442 N.W.2d 859 (1989). Triers of fact are not required to take opinions of experts as binding upon them. Determining the weight that should be given expert testimony is uniquely the province of the fact finder. *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996); *McWhirt v. Heavey*, 250 Neb. 536, 550 N.W.2d 327 (1996). Thus, even if Canell's uncontroverted statement were not too equivocal to carry much weight, the district court was at liberty to reject it.

Johnson's testimony as to the loss of income resulting from the failure to obtain a college degree was based on Canell's testimony that based upon the sophistication of her family and her intelligence, which he placed at "slightly, not significantly, above average," Anderson would probably have graduated from college, had she not been molested.

The preliminary question is whether it could be determined to a "reasonably certain" degree that Anderson would have attended and graduated from college in the absence of the molestation, particularly since she was 7 years old at the time of the occurrence.

Given the state of the record, the district court did not abuse its discretion in determining that there was no sound and reasonable basis such that Canell was able to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture. See *McArthur v. Papio-Missouri River NRD*, 250 Neb. 96, 547 N.W.2d 716 (1996). In such instances, the expert's opinion is to be stricken. See *id.*

Thus, there is no merit to this assignment of error.

### 2. ASSESSMENT OF DAMAGES

The foregoing determination renders moot the mother's second assignment of error, claiming that the district court erred in not awarding Anderson damages for the loss of future earning capacity.

### V. JUDGMENT

Accordingly, as first noted in part I, the judgment of the district court is affirmed.

AFFIRMED.

WHITE, C.J., participating on briefs.