DAVID AND SUSAN NORMAN, INDIVIDUALLY
AND AS NEXT FRIEND OF CHRISTOPHER NORMAN,
A MINOR CHILD, APPELLEES,
V. OGALLALA PUBLIC SCHOOL DISTRICT,
KEITH COUNTY DISTRICT NO. 1, A POLITICAL SUBDIVISION,
AND WILLIS HASTINGS, INDIVIDUALLY AND
AS EMPLOYEE OF SCHOOL DISTRICT, APPELLANTS.

609 N.W. 2d 338

Filed April 14, 2000.　No. S-98-993.

Todd R. McWha and Keith A. Harvat, of Murphy, Pederson, Waite & McWha, for appellants.

James L. Zimmerman, of Sorensen & Zimmerman, P.C., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

David and Susan Norman, individually and on behalf of their son, Christopher Norman (Christopher), brought a negligence action against the Ogallala Public School District, Keith County District No. 1, and teacher Willis Hastings. Christopher suffered severe injuries when the shirt he was wearing during a welding class caught fire. The district court for Keith County found the school district and Hastings negligent and awarded damages in the amount of $342,290.80. The school district and Hastings then filed this appeal. We moved this case to our docket pursuant to our power to regulate the caseloads of this court and the Nebraska Court of Appeals. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## FACTUAL BACKGROUND

In November 1994, Christopher, a 15-year-old freshman, was enrolled in a welding class at the Ogallala High School. The class was taught by Hastings and included instruction in both arc and acetylene welding. Students in the class were beginning welders who had not yet become proficient at welding.

The school provided certain protective gear for students to wear during the welding class consisting of goggles, helmets, leather gloves, and leather leggings. Students were encouraged, but not required, to utilize this protective gear. The school did not provide leather aprons for students' use during the welding class.

Classroom instruction was provided as part of the welding class. Students were given a textbook and handouts, which discussed welding procedures and certain safety measures in setting up and using welding equipment. Students also took a variety of tests which included performance of certain welding operations. None of these tests defined what type of protective clothing should be worn while welding, and most of the tests made no reference to protective clothing.

Hastings told students that they needed to wear "protective clothing" while welding and provided them with handouts regarding protective clothing. These handouts made reference only to leather clothing or clothing made from "heavy fire resistant cloth." The handouts depicted a welder wearing a helmet, leather jacket, coveralls, and gloves. However, Hastings simply told students to bring an "old shirt" from home to wear during class. Hastings allowed students to decide what to wear during welding class and did not inspect their clothing. Students were not prevented from welding regardless of what they were wearing. Information about protective clothing was not provided to students' parents. Hastings' deposition was offered and admitted into evidence, without objection to the following testimony:

Q You would agree it was your responsibility to ensure that the clothing worn by the student would minimize the risk of igniting themselves?

A No.

Q You would not agree with that?

A No.

. . . .

Q My question is, is it your duty to ensure that they are wearing proper protective clothing to minimize the risk of them igniting themselves?

A No. No.

Q That's not your job?

A No.

On November 16, 1994, Christopher was acetylene welding while wearing a black T-shirt. Over this, he wore his "protective clothing," a long-sleeved cotton-flannel shirt which was buttoned to the neck, with the sleeves also buttoned. While Christopher was welding, his flannel shirt ignited on the left side. Hastings and another shop teacher realized that Christopher's shirt was on fire and, after a struggle, managed to remove the shirt. The cotton-flannel shirt and black T-shirt were both burned over the entire left side.

Christopher suffered second- and third-degree burns to his chest, left side, and left arm, constituting 10 percent of his body. Christopher was treated at the Greeley Burn Center in Greeley, Colorado, where he underwent a debridement process during which dead skin was scraped from the burn every day for 2 weeks, causing extreme pain. He underwent painful therapy for several months and eventually had to have a skin graft taken from his thigh to allow the burn to heal. Christopher also had to wear a pressure garment for 1½ years in order to reduce scarring and had to perform exercises to prevent tightening of the scarred area. The significant scarring from the burns is permanent, but Christopher's range of motion and activities have not been limited as a result of the scarring and it is unlikely that he will have to have any further medical treatment.

The Normans brought a negligence action under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 13-902 to 13-926 (Reissue 1991 & Cum. Supp. 1994), against the school and Hastings (hereinafter collectively the school), individually and on Christopher's behalf. The school denied any negligence and asserted that it was immune from any negligence claim pursuant to the discretionary function exemption of the Political Subdivisions Tort Claims Act. The case was tried to the court.

At trial, three expert witnesses testified regarding welding safety standards. The American Welding Society (AWS) has promulgated certain safety standards which have been adopted by the American National Standards Institute (ANSI) and published in an ANSI safety standard. We will refer to the advisory safety standard then in effect as "ANSI Z49.1-94." ANSI is an organization which acts as a depository of industry and trade

standards. ANSI adopts standards submitted to it by industrial organizations and distributes these standards to the public. The three experts who testified at trial agreed that ANSI Z49.1-94 is applicable to anyone carrying out the welding process, including those in a school setting. ANSI Z49.1-94 was offered and admitted into evidence without objection.

C. Phillip Colver, one of the Normans' two expert witnesses, is a chemical engineering consultant who has studied the welding process during his professional career. Colver performed tests on the cotton-flannel shirt and cotton T-shirt Christopher was wearing the day he was burned. Colver holds a Ph.D. in chemical engineering and performs consulting in several areas, including flammability of materials, fires and arson, fire protection and suppression systems, and industry-government standards, including ANSI. Colver determined that the cotton-flannel shirt first ignited on the lower portion of the left side. Colver testified that this type of shirt offered no protection from the fire hazards involved in welding.

Colver also testified about ANSI Z49.1-94, which at E4.3 provides in part, "Heavier materials such as woolen clothing or heavy cotton are preferable to lighter materials because they are more difficult to ignite. Cotton clothing, if used for protection, should be chemically treated to reduce its combustibility." Colver testified further that ANSI Z49-1-94, E4.3.3, provides that leather aprons shall be worn when additional protection is needed while welding. He testified that ANSI Z49.1-94, § 4.6, provides, "Persons exposed to welding hazards shall be trained in the use of, and understand the reasons for, protective clothing and equipment."

In Colver's opinion, the students were not properly trained or supervised regarding proper protective clothing and the school did not follow the ANSI safety standards regarding protective clothing. Colver also testified that in a school setting, when dealing with students who have less appreciation of welding hazards than a professional welder, the safest possible setting should be provided. It was also his opinion that the fact that Christopher was not wearing proper protective clothing was the proximate cause of Christopher's injuries.

James Rhone, director of environmental health and safety at the University of Nebraska-Lincoln, testified on behalf of the Normans about proper safety procedures. Rhone has a master's degree in chemistry and is the official "safety officer" for the university. Rhone is responsible for keeping the university in compliance with safety regulations. Rhone was trained in welding in high school, but no longer performed any welding operations at the time of trial.

Rhone testified that in his opinion there were no safety practices taught in Hastings' welding class, even though safety would be especially important when teaching young students to weld. It was Rhone's opinion that simply giving students handouts to read was not an adequate safety procedure. Rhone also testified that the term "should" as used in ANSI Z49.1-94, E4.3, expresses a recommendation that cotton clothing be chemically treated to reduce combustibility. Rhone testified that the school's failure to provide proper protective clothing and use proper safety procedures was the proximate cause of Christopher's injuries. Both Rhone and Colver testified that had the school followed proper procedures with respect to protective clothing, Christopher would not have been burned.

Donald Lynn, a professional welding engineer, testified on behalf of the school. Lynn testified that the school was in compliance with ANSI Z49.1-94, E4.3, on the day of Christopher's accident because it is not mandatory under ANSI Z49.1-94, E4.3, that leather or flame-retardant clothing be worn while welding. In Lynn's opinion, Christopher was properly dressed for welding, the school properly informed students and parents about protective clothing, and students were properly supervised during class. Lynn testified that there was no breach of duty by the school which caused this accident.

Testimony was also adduced on the issue of the pain Christopher endured due to his injuries. Christopher and his parents testified about the pain Christopher endured while undergoing the debridement process. Donald Hunter, an occupational therapist trained in burn care and therapy who treated Christopher, testified to the pain Christopher underwent during the debridement process and the skin-grafting. Photographs introduced into evidence depict the extent and severity of the burns.

In its order issued on July 22, 1998, the court determined that the discretionary function exception to the Political Subdivisions Tort Claims Act did not apply in this case. The court further found that the school was negligent in allowing Christopher to wear an untreated cotton-flannel shirt while welding, in failing to ensure that students wore proper protective clothing, in failing to provide students and parents with sufficient information about protective clothing, and in failing to provide students with leather aprons to wear during the welding class. The court found that the school's negligence was a proximate cause of Christopher's injuries and awarded damages in the amount of $342,290.80.

The school made a motion for judgment notwithstanding the verdict or for a new trial, which was overruled. This appeal followed.

## ASSIGNMENTS OF ERROR

The school claims, restated and summarized, that the trial court erred in (1) determining that the discretionary function exception did not apply; (2) allowing the opinions of Colver and Rhone into evidence; (3) interpreting ANSI Z49.1-94, E4.3; (4) finding the school negligent in allowing Christopher to wear an untreated cotton-flannel shirt while welding; (5) finding the school negligent in failing to ensure students wore proper clothing; (6) determining the school failed to provide students and parents with sufficient information about protective clothing; (7) determining that the school was negligent in failing to provide leather aprons to students; (8) determining that the school's negligence was a proximate cause of Christopher's injuries; and (9) awarding excessive damages.

## STANDARD OF REVIEW

In actions brought pursuant to the Political Subdivisions Tort Claims Act, the findings of the trial court will not be disturbed on appeal unless they are clearly wrong, and when determining the sufficiency of the evidence to sustain the verdict, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in favor of such party, and it is entitled to the benefit of every inference that can

reasonably be deduced from the evidence. *Johnson v. School Dist. of Millard*, 253 Neb. 634, 573 N.W.2d 116 (1998).

■ When the facts are undisputed, the determination of whether the discretionary function exemption of the Political Subdivisions Tort Claims Act applies is a question of law. *Jasa v. Douglas County*, 244 Neb. 944, 510 N.W.2d 281 (1994). As to questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *Harmon v. Irby Constr. Co.*, 258 Neb. 420, 604 N.W.2d 813 (1999).

■ A trial court is allowed discretion in determining whether a witness is qualified to testify as an expert, and unless the court's finding is clearly erroneous, such a determination will not be disturbed on appeal. *McArthur v. Papio-Missouri River NRD*, 250 Neb. 96, 547 N.W.2d 716 (1996).

■ An award of damages may be set aside as excessive or inadequate when, and not unless, it is so excessive or inadequate as to be the result of passion, prejudice, mistake, or some other means not apparent in the record. *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 253 Neb. 813, 572 N.W.2d 362 (1998). If an award of damages shocks the conscience, it necessarily follows that the award was the result of passion, prejudice, mistake, or some other means not apparent in the record. *Id.* However, the amount of damages is a matter solely for the fact finder, whose action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of damages proved. *Id.*

## ANALYSIS

### DISCRETIONARY FUNCTION EXEMPTION

The school claims that it is immune from any alleged negligence in this case pursuant to the discretionary function exemption of the Political Subdivisions Tort Claims Act. Section 13-910(2) provides:

> The Political Subdivisions Tort Claims Act . . . shall not apply to:
>
> . . . .
>
> . . . any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary func-

tion or duty on the part of the political subdivision or an employee of the political subdivision, whether or not the discretion is abused.

■ The purpose of the discretionary function exemption is to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. *Jasa, supra.* The discretionary function exemption extends only to basic policy decisions made in governmental activity, and not to ministerial activities implementing such policy decisions. *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 256 Neb. 406, 591 N.W.2d 532 (1999). Examples of discretionary functions include the initiation of programs and activities, establishment of plans and schedules, and judgmental decisions within a broad regulatory framework lacking specific standards. See *Jasa, supra.* The discretionary function exemption in tort claims acts extends only to basic policy decisions and not to the exercise of discretionary acts at an operational level. *Talbot v. Douglas County*, 249 Neb. 620, 544 N.W.2d 839 (1996). See, also, *Parker, supra*; *Talbot, supra*; *Hamilton v. City of Omaha*, 243 Neb. 253, 498 N.W.2d 555 (1993); *Koepf v. County of York*, 198 Neb. 67, 251 N.W.2d 866 (1977). The political subdivision remains liable for negligence of its employees at the operational level, where there is no room for policy judgment. *Talbot, supra.*

The school claims that Hastings' decisions regarding supervision, materials, and clothing to be worn during the welding class involve an element of judgment or choice and are thus "policy decisions," to which the discretionary function exemption applies. However, Hastings' decisions involving the welding class are not basic policy decisions, but are discretionary acts at an operational level. Such decisions are not planning-level decisions involving social, economic, or political policy judgment and do not come within the discretionary function exemption. See *Parker, supra.* We conclude as a matter of law that the discretionary function exemption has no application in this case.

## EXPERT TESTIMONY

The school asserts the trial court erred in admitting the expert testimony of Colver and Rhone, claiming that these experts "lacked foundation" to give any opinions related to welding.

■ There is no exact standard for fixing the qualifications of an expert. *Danielsen v. Richards Mfg. Co., Inc.*, 206 Neb. 676, 294 N.W.2d 858 (1980). A trial court is allowed discretion in determining whether a witness is qualified to testify as an expert, and unless the court's finding is clearly erroneous, such a determination will not be disturbed on appeal. *McArthur v. Papio-Missouri River NRD*, 250 Neb. 96, 547 N.W.2d 716 (1996).

■ The record indicates that both Colver and Rhone were qualified to testify as experts in this case. Colver is a chemical engineer who testified about the flammability of the shirt and ANSI Z49.1-94. Rhone, a safety director, testified about safety practices that would be adequate for a school welding class. Both experts possessed special skill or knowledge regarding safety standards and practices and were clearly testifying in their areas of expertise. Additionally, both experts had general knowledge of the welding process. The fact that Colver and Rhone were not professional welders does not mean they were not competent to render opinions about safety practices. The school argues, in essence, that its expert, Lynn, is more qualified than Colver and Rhone because Lynn is a professional welder. However, this goes to the weight, not the admissibility, of the testimony. See *Danielsen, supra.* Determining the weight that should be given expert testimony is uniquely the province of the fact finder. *Jones v. Meyer*, 256 Neb. 947, 594 N.W.2d 610 (1999). See, also, *Danielsen, supra.* The trial court's determination that Colver and Rhone were qualified to testify as experts was not clearly erroneous.

## ANSI STANDARD

The parties do not dispute that ANSI Z49.1-94 was relevant to the facts of this case. However, the school argues that the trial court erred in its interpretation of that standard, and in particular E4.3. This section provides in part, "Cotton clothing, if used for protection, should be chemically treated to reduce its combustibility." Under ANSI Z49.1-94, §§ 2.6 and 2.7, the term "should" indicates provisions which are not mandatory, while the term "shall" indicates provisions which are mandatory. The school claims the trial court improperly substituted its own definition of the term "should" in determining that the school was

negligent in allowing Christopher to wear untreated cotton clothing during the welding class.

■ The trial court determined that the term "should" as used in ANSI Z49.1-94, E4.3, carries "an expression of duty or obligation." The school claims that because the wearing of chemically treated cotton is not "mandatory" under ANSI Z49.1-94, E4.3, the school did not breach its duty of care by allowing Christopher to wear an untreated cotton-flannel shirt. However, this standard is applicable to anyone performing welding, and while it may not be "mandatory" for all welders to wear chemically treated cotton, the court noted that students who are learning to weld need to be provided with as much protection as possible. The standard of care in this case is that of ordinary negligence, or what a reasonable person would or would not do under similar circumstances. See *Tapp v. Blackmore Ranch*, 254 Neb. 40, 575 N.W.2d 341 (1998). Advisory safety standards, such as the ANSI standard, may represent a consensus of what a reasonable person in a particular industry would do, and therefore may be helpful to the trier of fact in deciding whether the standard of care has been met. *Hansen v. Abrasive Engineering and Manufacturing*, 317 Or. 378, 856 P.2d 625 (1993); *Kent Village v. Smith*, 104 Md. App. 507, 657 A.2d 330 (1995). See, also, *Tite v. Omaha Coliseum Corporation*, 144 Neb. 22, 12 N.W.2d 90 (1943); *Davis v. GBR Properties*, 233 Ga. App. 550, 504 S.E.2d 204 (1998); *Meseck v. General Elec. Co.*, 195 A.D.2d 798, 600 N.Y.S.2d 384 (1993). ANSI Z49.1-94, E4.3, clearly expresses a recommendation that cotton clothing be chemically treated if it is used for protection. The school did not follow that recommendation, which may be considered as evidence of negligence. We determine that under the circumstances of this case, considering the sufficiency of the evidence in the light most favorable to the successful parties, the trial court's utilization of ANSI Z49.1-94, E4.3, was not clearly wrong. See *Johnson v. School Dist. of Millard*, 253 Neb. 634, 573 N.W.2d 116 (1998).

### FINDINGS OF NEGLIGENCE

■ The school claims the trial court erred in finding the school negligent in several respects. First, the school claims the

trial court erred in finding that the school was negligent in allowing Christopher to wear an untreated cotton-flannel shirt while welding. The school claims that under ANSI Z49.1-94, E4.3, it is not mandatory that cotton clothing be chemically treated and that thus, the school did not breach its duty by allowing Christopher to wear the untreated shirt. However, negligence must be measured against the particular set of facts and circumstances which are present in each case. *Hearon v. May*, 248 Neb. 887, 540 N.W.2d 124 (1995); *Brahatcek v. Millard School District*, 202 Neb. 86, 273 N.W.2d 680 (1979).

Students in the welding class were not professional welders and had not perfected their welding techniques. Colver testified that in a school setting, when dealing with students who have less appreciation of welding hazards than a professional welder, the safest possible setting should be provided. Chemical treatment reduces the risk of cotton clothing becoming ignited. The court recognized the importance of the particular circumstances of this case in finding that the school breached its duty of care by allowing inexperienced welders to wear untreated cotton shirts. Although ANSI Z49.1-94, E4.3, may not make wearing chemically treated cotton "mandatory," we cannot say that the trial court's finding of negligence was clearly wrong based on the evidence.

The school next asserts that the trial court erred in finding that the school was negligent in failing to ensure students wore proper clothing. However, there is competent evidence in the record that students were not properly informed about the type of protective clothing to wear, that they were not prevented from welding regardless of what they were wearing, and that Hastings never inspected what types of clothing students wore. The trial court found that under the circumstances, the school was negligent in failing to ensure that students wore proper clothing. Based on the evidence, the trial court's finding in this respect was not clearly wrong.

The school further claims the trial court erred in finding the school negligent in failing to provide students and parents with sufficient information about protective clothing. The trial court found that even though Hastings was aware that ANSI Z49.1-94, E4.3, recommended that cotton clothing be chemically treated if

used for protection, he never provided this information to students or parents, which would have allowed them to make an informed choice as to the type of clothing to select. The record shows that Hastings provided no information to parents regarding protective clothing. Based on the evidence, the trial court's finding of negligence was not clearly wrong.

Finally, the school asserts that the trial court erred in finding that the school was negligent by failing to provide leather aprons for students to wear while welding. The school claims leather aprons were not required by ANSI Z49.1-94. However, ANSI Z49.1-94, § 4.3.3, provides, "Durable flame-resistant aprons made of leather or other suitable materials shall be used to protect the front of the body when additional protection against sparks and radiant energy is needed." The court noted in its order that the handouts students were given depicted a welder wearing leather clothing, recommended that leather aprons or jackets be worn, and provided no alternatives if leather clothing was not provided. Based on a review of these handouts, the court determined that a leather apron would have covered the area where Christopher's shirt caught fire, and had Christopher been wearing an apron, he would not have been burned. The trial court's finding that the school was negligent in failing to provide leather aprons, considered in the light most favorable to the successful parties, was not clearly wrong. See *Johnson v. School Dist. of Millard*, 253 Neb. 634, 573 N.W.2d 116 (1998).

### PROXIMATE CAUSE

The school claims the trial court erred in finding that the school's negligence was the proximate cause of Christopher's injuries. A proximate cause is a cause that (1) produces a result in a natural and continuous sequence and (2) without which the result would not have occurred. *Stiver v. Allsup, Inc.*, 255 Neb. 687, 587 N.W.2d 77 (1998). The determination of causation is ordinarily a question for the trier of fact. *Tapp v. Blackmore Ranch*, 254 Neb. 40, 575 N.W.2d 341 (1998).

The evidence presented by the Normans established that had the school followed proper safety procedures with regard to protective clothing, Christopher would not have been wearing the shirt in question, would not have been allowed to weld while

wearing the shirt, or would have been wearing a leather apron which would have covered the area of the shirt which caught fire. Two expert witnesses testified that had Christopher not been wearing the cotton-flannel shirt on the day in question, he would not have been injured and that the school's negligence was the cause of Christopher's injuries. Based on the evidence presented, the trial court's finding that the school's negligence was the proximate cause of Christopher's injuries was not clearly wrong.

### DAMAGES

The school claims the trial court's award of $342,290.80 in damages is excessive. On appeal, the fact finder's determination of damages is given great deference. *Seeber v. Howlette,* 255 Neb. 561, 586 N.W.2d 445 (1998); *Nichols v. Busse,* 243 Neb. 811, 503 N.W.2d 173 (1993).

The school claims the damages are excessive because Christopher has completely recovered from his injuries, has no limitations on his range of motion or his activities, and it is unlikely that he will incur future medical expenses. However, the record contains extensive evidence, including both testimony and photographs, demonstrating the pain that Christopher endured and the permanent scarring resulting from the burns. In addition to the pain Christopher endured, Christopher's parents incurred medical bills in the amount of $44,614.54 as a direct result of Christopher's injuries. The award of damages was not so excessive as to be the result of passion, prejudice, mistake, or some other means not apparent in the record. See *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.,* 253 Neb. 813, 572 N.W.2d 362 (1998). The trial court's determination of damages is supported by evidence and bears a reasonable relationship to the elements of damages proved and, thus, will not be disturbed on appeal. See *id.*

### CONCLUSION

Having considered all of the school's assignments of error and finding them to be without merit, we affirm the judgment of the district court.

AFFIRMED.