ROBERT LEWIS HERTZEL III, BY AND THROUGH ROBIN JOPLIN, HIS MOTHER AND NEXT BEST FRIEND, APPELLANT, V. THE PALMYRA SCHOOL DISTRICT, DISTRICT OR1, APPELLEE.

733 N.W.2d 578

Filed May 15, 2007.    No. A-05-711.

Mark T. Bestul and Vincent M. Powers, of Vincent M. Powers & Associates, for appellant.

Randall L. Goyette and Jarrod S. Boitnott, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

SIEVERS and CASSEL, Judges, and HANNON, Judge, Retired.

SIEVERS, Judge.

Robert Lewis Hertzel III, by and through Robin Joplin, his mother and next best friend, appeals from the decision of the district court for Lancaster County which granted summary judgment in favor of the Palmyra School District, District OR1 (PSD). Hertzel's claim was that while he was a kindergartner at Bennet Elementary School, PSD was negligent in failing to protect him from bodily harm caused by another kindergartner, who will be referred to as John Doe to protect his identity, and in failing to control the conduct of John Doe, when PSD knew or should have known that John Doe was likely to cause bodily harm to others if he was not controlled. We find that genuine issues of material facts exist, and we therefore reverse the district court's award of summary judgment and remand the cause for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

During the spring semester of the 1996-97 school year, Hertzel and another student, John Doe, were kindergartners at Bennet Elementary School, part of PSD. There were two alleged incidents of John Doe inappropriately touching Hertzel in the bathroom at school. The first incident allegedly occurred in February or March 1997, and the second incident occurred on the last day of the 1996-97 school year, although such exact date does not appear in our record.

On October 21, 2002, Hertzel filed a petition alleging that in April and May 1997, he was a kindergartner at Bennet Elementary School and was molested by another kindergartner

in the bathroom of the school during the course of regular school hours. Hertzel alleged that a proximate cause of the molestation was the negligence of PSD in failing to properly supervise the students at the elementary school and/or failing to control the student responsible for the molestation. Hertzel alleged that prior to the molestation, PSD knew or should have known that the molesting student was a danger to other students. Hertzel alleged that as a result of the molestation, he suffered and will continue to suffer "disability, mental anguish, pain and suffering and will be caused to incur healthcare expenses."

In its answer filed on November 22, 2002, PSD denied the allegations in Hertzel's petition. Furthermore, PSD alleged that (1) Hertzel failed to state a cause of action; (2) to the extent Hertzel seeks health care expenses or any other form of recovery on behalf of Joplin, Hertzel's mother, such claim is barred by the failure to either timely file a notice as required by the Political Subdivisions Tort Claims Act or comply with the notice requirement of the act; (3) to the extent that Hertzel claims medical bills or any recovery on behalf of Joplin, Hertzel's claim is barred by the statute of limitations; and (4) PSD is immune from liability because (a) the claim is based on a discretionary function as defined in Neb. Rev. Stat. § 13-910(1) (Reissue 1997) and/or (b) the claim arises out of an alleged assault or battery as referred to in § 13-910(7). In its grant of summary judgment, the district court did not address the Political Subdivisions Tort Claims Act, the statute of limitations, or the immunity defenses raised by PSD.

On March 24, 2004, PSD filed a motion for summary judgment alleging that the pleadings, affidavits, and depositions show there are no material issues of fact and that thus, they are entitled to judgment as a matter of law.

A hearing on the motion for summary judgment was held on May 4, 2005. At that hearing, PSD offered into evidence the depositions of John Doe's mother and Joplin and the affidavits of Gail Prokop (the boys' kindergarten teacher) and Dwight Thiemann (the principal at Bennet Elementary School during the 1996-97 school year). All exhibits were received into evidence without objection.

During Joplin's deposition, she testified that John Doe was Hertzel's best friend in kindergarten, although the two boys did not socialize outside of school. In February or March 1997, Hertzel's babysitter told Joplin that Hertzel told her that he had been touched in the bathroom at school on his private area. Joplin testified that she called the school guidance counselor to report the incident and that the counselor told Joplin kids "explore," it was "normal," there was nothing to be worried about, and Joplin should not make an issue out of it. On the last day of school in the spring of 1997, Hertzel's babysitter told Joplin that Hertzel told her John Doe inappropriately touched him again that day at school. Joplin testified that she again called the school and talked to the guidance counselor, who then had her talk to the principal. Joplin was told by the principal that she needed to talk to PSD, because both he and the counselor were no longer going to be working at the school, and that the information would be passed on to the next principal.

Joplin testified that she called Child Protective Services (CPS) after the second incident but that Hertzel would not talk to the CPS worker. CPS had a police officer, a Deputy Kotschwar, come out, and Hertzel did talk to him. Joplin said that Deputy Kotschwar told her that Hertzel said he had been touched on numerous occasions. In Joplin's testimony, she does not say Deputy Kotschwar told her that Hertzel said he was touched by John Doe, although that is certainly implied in her testimony about the conversation with Deputy Kotschwar. Joplin testified that she also called John Doe's mother after the second incident and that John Doe's mother told her John Doe was in counseling for a non-school-related incident. John Doe's mother also told Joplin that John Doe admitted to touching Hertzel. Joplin testified that she had never talked to Hertzel about what happened and that her information came from Hertzel's babysitter and Deputy Kotschwar.

During John Doe's mother's deposition, she testified that John Doe started getting counseling on May 9, 1997, after he initiated some inappropriate contact with his daycare provider's young son. It was after such date that Joplin contacted John Doe's mother about the incident between John Doe and Hertzel. It

was not until after she was contacted by Joplin that John Doe's mother informed the school that John Doe was in counseling.

In the affidavit of Prokop, the kindergarten teacher, she stated:

4. At no time prior to the 1996-1997 school year, or during the 1996-1997 school year was it reported to me by any school official, parent, or governmental agency or official or any other person that John Doe had in the past sexually molested children, or had exhibited any behavior which would indicate that he might molest or otherwise have sexually inappropriate contact with other students. In short, at no time before the 1996-1997 school year, or at any time during that school year, were there any facts of any type which put me on notice that John Doe presented a risk of any type to any student.

5. . . . There was nothing in John Doe's behavior during the 1996-1997 school year which in any way indicated to me that he might abuse children or act inappropriately around them or inappropriately touch them. At no time during the 1996-1997 school year did . . . Hertzel, or any other student, report to me that John Doe had inappropriately touched [Hertzel] or made inappropriate comments, or done anything to indicate that [John Doe] might do so.

6. The first time I learned that a claim had been made that John Doe had acted inappropriately towards . . . Hertzel did not occur until the start of the 1997-1998 school year when . . . Hertzel's report of inappropriate touching was told to me by Steve Robb, who at the time was the Elementary School Principal with [PSD].

In the affidavit of Thiemann, the Bennet Elementary School principal during the 1996-97 school year, he stated:

4. It was not until after the conclusion of the 1996-97 school year in a social setting I heard a rumor that . . . Hertzel had reported to somebody that he had been molested or inappropriately sexually touched by another student. . . .

5. At no time during the 1996-97 school year was it reported to me by . . . Hertzel, his mother, father, any teacher, administrative official, or governmental worker

or any other person that . . . Hertzel had reported that he had been inappropriately sexually touched by John Doe. Additionally, at no time during the 1996-97 school year was it reported to me by any parent, teacher, administrative official, governmental official or agency or any other person that John Doe had himself been abused, or was at risk of abusing other students.

6. During the term of my employment and still to date, I was not aware of any records or documentation of any type relating to any claims or reports made by . . . Hertzel, nor were there any records of reports in any way relating to any claim that John Doe had molested other students, or was at a risk for doing so.

In its order dated May 16, 2005, the district court granted PSD's motion for summary judgment. Among the district court's findings were the following: (1) Thiemann, the principal at Bennet Elementary School, was unaware of any records or documentation of any type relating to any claims or reports made by Hertzel or relating to any claim that John Doe had inappropriately touched other students or presented a risk for doing so; (2) there was nothing in John Doe's behavior during the 1996-97 school year which indicated to Prokop, the kindergarten teacher, that he might abuse children or act inappropriately around them or inappropriately touch them; (3) John Doe's mother did not notify the school that John Doe was in counseling due to inappropriate behavior (which occurred at his daycare provider's house in April or May 1997) until sometime after she learned of the incident which occurred on the last day of the 1996-97 school year involving her son and Hertzel; (4) at no time during the 1996-97 school year was it reported to Prokop that John Doe had in the past touched other children inappropriately or had exhibited behaviors which would indicate that he might inappropriately touch or otherwise have sexually inappropriate contact with other students; (5) at no time during the 1996-97 school year was it reported to Thiemann by any parent, teacher, administrative official, governmental official or agency, or any other person that John Doe had himself been abused or was at risk of abusing other students; and (6) Thiemann did not become aware of Hertzel's claims of inappropriate touching until after

the conclusion of the 1996-97 school year, and Prokop did not become aware of these claims until the beginning of the 1997-98 school year. The district court concluded:

> While there are facts by which a reasonable fact-finder could conclude that . . . Hertzel was inappropriately touched on one or more occasions during the 1996-1997 school year, there is no evidence that this alleged touching was a result of negligence on the part of [PSD]. . . .
>
> With respect to the issue of controlling John Doe's behavior, there is no evidence which demonstrates that [PSD] knew that John Doe allegedly touched . . . Hertzel until at best the conclusion of the 1996-1997 school year. The State of Nebraska has adopted the Restatement (Second) of Torts §§ 315 and 319 with respect to when there is a duty to control the conduct of a third party. The undisputed evidence here shows that [PSD] did not have knowledge of the necessity to control John Doe's conduct. Therefore, under the Restatement, [PSD] had no duty to exert such control.

Hertzel timely appeals the district court's order.

## ASSIGNMENT OF ERROR

Hertzel asserts that the district court erred in sustaining PSD's motion for summary judgment, because genuine issues of material fact exist as to whether PSD was negligent.

## STANDARD OF REVIEW

■ Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Cerny v. Longley*, 270 Neb. 706, 708 N.W.2d 219 (2005).

■ In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that it is entitled to judgment as a matter of law. *New Tek Mfg. v. Beehner*, 270 Neb. 264, 702 N.W.2d 336 (2005). A party moving for summary judgment must make a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. Once the moving party makes a prima facie case, the burden to produce evidence, showing the existence of a material issue of fact that prevents judgment as a matter of law, shifts to the party opposing the motion. *Id.*

Nebraska courts treat claims against school districts for lack of supervision as standard negligence actions. See, *Norman v. Ogallala Pub. Sch. Dist.*, 259 Neb. 184, 609 N.W.2d 338 (2000); *Johnson v. School Dist. of Millard*, 253 Neb. 634, 573 N.W.2d 116 (1998). "For actionable negligence to exist, there must be a legal duty on the part of the defendant to protect the plaintiff from injury, a failure to discharge that duty, and damage proximately resulting from such undischarged duty." *Brown v. Social Settlement Assn.*, 259 Neb. 390, 393, 610 N.W.2d 9, 11 (2000).

The Nebraska Supreme Court has held that a school and its employees owe students some duty of care. See, *Norman v. Ogallala Pub. Sch. Dist., supra*; *Johnson v. School Dist. of Millard, supra*. "The proper standard of care regarding negligent supervision is whether the defendant acted as a reasonably prudent person would in a similar circumstance." *Johnson v. School Dist. of Millard*, 253 Neb. at 638, 573 N.W.2d at 119.

Based upon its review of the depositions and the affidavits, the district court found that neither Thiemann nor Prokop knew of the alleged touching incident occurring in February or March 1997, that neither became aware of the second incident until after the school year was over, and that neither was aware during the 1996-97 school year that John Doe was in counseling. We agree that the record is clear with regard to these findings by the district court.

■ However, the district court's findings, and thus its ultimate conclusion, completely ignore the school guidance counselor's knowledge acquired in February or March 1997 that a touching incident involving Hertzel had occurred in school. The evidence shows that Joplin made such a report, but there is no evidence that the counselor further investigated the report by Joplin or that the counselor informed Thiemann or Prokop of the incident reported to the counselor. According to Joplin, the counselor told Joplin that it was no big deal and not to make an issue of it. Given that "[t]he proper standard of care regarding negligent supervision is whether the defendant acted as a reasonably prudent person would in a similar circumstance," *Johnson v. School Dist. of Millard*, 253 Neb. at 638, 573 N.W.2d at 119, the counselor's knowledge and her apparent inaction after Joplin's report present a material issue of fact which prevents summary judgment. In short, the factual question is whether the counselor's failure to act was reasonable given the school's duty to supervise its students in order to prevent harm to such students. And, because the counselor is an employee and an agent of PSD, any negligence by the counselor is imputed to PSD. The law imputes to the principal or master responsibility for the negligent acts of his or her agent or servant done in obedience to the express orders or directions of the master, or within the scope of the employee's authority or employment in the master's business, and if those acts cause injury to third persons, the law holds the principal or master liable therefor. *Pullen v. Novak*, 169 Neb. 211, 99 N.W.2d 16 (1959); *Van Auker v. Steckley's Hybrid Seed Corn Co.*, 143 Neb. 24, 8 N.W.2d 451 (1943). Thus, if the school guidance counselor was negligent, such negligence would be imputed to PSD. Therefore, PSD failed to make a prima facie case that it is entitled to judgment as a matter of law and summary judgment was improper.

■ While we have found that summary judgment was improper because of a factual issue regarding whether the counselor's failure to take any action upon Joplin's report was reasonable, PSD also argues that it had no duty under the Restatement (Second) of Torts §§ 315, 319, and 320 (1965). These sections relate to the duty to control a third person to prevent such person from harming another and, in essence, condition liability

upon the actor's knowledge and opportunity to control such third person. However, § 320, for example, speaks in terms of when the actor "knows or should know of the necessity and opportunity for exercising such control." And, § 319 speaks of the duty to exercise reasonable care to prevent harm to another when the actor takes control of the third person and "knows or should know [that the third person is] likely to cause bodily harm to others if not controlled." Thus, while the record shows that PSD, the actor in this case, did not know that John Doe was the child molesting Hertzel until after the second incident was reported to Hertzel's babysitter at the end of the school year, it is the "should know" portion of the two Restatement sections which is crucial. Therefore, remembering the standard of review on a grant of summary judgment, the knowledge the counselor acquired in February or March 1997 can be seen as being such that a reasonable person should have known of the threat that John Doe posed to other children—had she investigated. We do not believe that the Restatement envisions no duty when one fails to acquire the precise knowledge necessary to prevent the harm when the necessary knowledge is available, if one seeks it out. Put another way, "ignorance may be bliss," but ignorance is not always a defense, because as the Restatement makes clear, sometimes one "should know." Whether the counselor and, by imputation, PSD should have known that John Doe had molested Hertzel and thus needed to be controlled to prevent further harm is a factual question for trial.

## CONCLUSION

For the reasons stated above, we find that summary judgment was improper because genuine issues of material facts exist. We reverse the district court's award of summary judgment and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.