DANIEL HAWKINS AND JULIUS BALLARD, APPELLEES, V.
CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLANT.
627 N.W.2d 118

Filed June 8, 2001.   No. S-00-139.

Sheri E. Cotton, Assistant Omaha City Attorney, for appellant.

Thomas F. Dowd, of Dowd & Dowd, for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Daniel Hawkins and Julius Ballard (plaintiffs), employees of the City of Omaha (the City), brought an action against the City claiming they were improperly classified under the job classification "City Maintenance Foreman I" (CMF I). Plaintiffs asserted that they were performing the duties of job classification "City Maintenance Foreman II" (CMF II) and were entitled to compensation appropriate for that job classification. Plaintiffs' claims were denied by resolution of the Omaha City Council on December 5, 1995. Plaintiffs appealed to the district court. After conducting a trial de novo, the district court ordered the City to reclassify plaintiffs under the CMF II classification, account for the wages lost due to the improper classification, and pay plaintiffs those wages. The City appealed. Plaintiffs then filed a petition to bypass the Nebraska Court of Appeals, which this court granted.

## FACTUAL BACKGROUND

Plaintiffs are employees of the City and are classified under the job classification CMF I. In 1993, due to their belief that they were actually performing the duties of the CMF II classification, a job classification with a higher rate of pay, plaintiffs requested that the City Personnel Department perform a "job study" for each of them to determine whether they were working outside their CMF I job classification. The personnel department conducted job studies for plaintiffs in 1993 and concluded that neither was working outside the CMF I job classification.

On August 29, 1994, plaintiffs filed a claim with the city comptroller for underpayment of wages pursuant to Neb. Rev. Stat. § 14-804 (Reissue 1997). Section 14-804 provides:

> Before any claim against the city . . . is allowed, the claimant or his agent or attorney shall verify the same by his affidavit, stating that the several items therein mentioned are just and true and the services charged therein or articles furnished, as the case may be, were rendered or furnished as therein charged, and that the amount therein charged and claimed is due and unpaid, allowing all just credits. The city comptroller and his deputy shall have authority to administer oaths and affirmations in all matters required by this section. All claims against the city must be filed with the city comptroller. When the claim of any person against the city is disallowed, in whole or in part, by the city council, such person may appeal from the decision of said city council to the district court of the same county, as provided in section 14-813.

On August 30, 1994, the city comptroller submitted plaintiffs' claims to the Omaha City Attorney.

On December 5, 1995, the city attorney submitted to the Omaha City Council a recommendation that a resolution be adopted denying plaintiffs' claims because the job studies conducted by the personnel department in 1993 showed that plaintiffs had not been misclassified. At its December 5 meeting, the city council adopted a resolution denying plaintiffs' claims based upon the recommendation by the city attorney. No hearing was held before the city council regarding plaintiffs' claims.

When a claim submitted to the comptroller under § 14-804 is denied by the city council, the party whose claim was denied may appeal to the district court as provided by Neb. Rev. Stat. § 14-813 (Reissue 1997). § 14-804. Plaintiffs appealed and, pursuant to § 14-813, filed a bond with the city clerk and filed a petition and a transcript of the city council proceedings in the district court. This transcript consisted of the bond filed with the city clerk, the city council agenda for December 5, 1995, affidavits submitted by plaintiffs to the comptroller, correspondence from the city attorney's office, and the city council's resolution.

A trial de novo on plaintiffs' claims was held in the district court on April 28 and 29 and May 13 and 14, 1999. The job descriptions issued by the City for both the CMF I and CMF II job classifications were admitted into evidence. The job description for the CMF I classification described this position as "a lead foreman position on an assigned crew performing maintenance and/or construction duties" which involves "supervising and participating in those duties which are performed by an assigned crew." The functions of the CMF I classification included scheduling and directing the work of crew members, operating various types of equipment when assisting subordinate employees in performance of duties, and directing automotive equipment repair. The CMF I classification description did not provide for authority to initiate disciplinary action against subordinate employees, to coordinate projects with other maintenance divisions, or to communicate with the public regarding complaints or requests for service.

The CMF II classification was described as "skilled and supervisory work as foreman in charge of overall effective operation of a City facility or assigned area." The job description for the CMF II classification further stated that "[w]ork involves responsibility for supervising subordinate personnel engaged in general duties in the designated area." Functions of the CMF II classification included counseling and evaluating employees, recommending disciplinary action against employees, coordinating work projects with other maintenance divisions, and communicating with the public regarding complaints or requests for service.

At trial, Hawkins testified that he had been employed with the traffic maintenance division of the City as a CMF I, initially

working in the pavement markings section beginning in September 1990. Ballard testified that he had been employed with the traffic maintenance division of the City as a CMF I, initially working in the parking meter section beginning in 1988. Testimony was also adduced that in early 1994, plaintiffs switched positions, with Ballard taking over the position as a CMF I in the pavement markings section and Hawkins taking over the position as a CMF I in the parking meter section. At all relevant times, plaintiffs were classified at the CMF I level, regardless of whether they were with the parking meter section or the pavement markings section.

Plaintiffs testified that the duties they performed while employed in both the pavement markings section and the parking meter section included counseling and evaluating employees, recommending disciplinary action against employees, coordinating work projects with other maintenance divisions, and communicating with the public regarding complaints or requests for service. Plaintiffs further testified that operating equipment and participating in the actual physical work performed by their crew was not a regular part of the duties they performed, but that they did participate in such functions in emergency situations when there was a shortage in personnel due to vacations or illness.

Patrick Lulow, plaintiffs' immediate supervisor, testified that absent an emergency situation, neither plaintiff operated equipment when assisting subordinate employees in performance of assigned duties. Lulow agreed that plaintiffs had been performing duties described only under the CMF II classification.

Plaintiffs called Gary L. Troutman as an expert witness. Troutman owns a human resources consulting firm which specializes in providing personnel services to cities and counties, including the development of job descriptions. Prior to starting his own business, Troutman earned a bachelor of arts degree in 1972 and thereafter was employed with the City in the personnel department for a period of 12 years. His employment with the City included serving as personnel specialist from 1972 to 1974, compensation manager from 1974 to 1978, personnel director from 1978 to 1982, and labor relations director from 1982 to 1984. During his tenure with the City, Troutman was involved in drafting the job descriptions for the CMF I and CMF II classifi-

cations. In all, Troutman had 27 years of experience in the area of personnel, compensation, and development of job descriptions.

Troutman reviewed the CMF I and CMF II job descriptions and the 1993 job studies performed by the City. He conducted personal interviews with plaintiffs and Lulow and listened to the testimony adduced in court from plaintiffs and Lulow. Based on this information, Troutman testified that in his opinion, plaintiffs were performing the duties of the CMF II classification. Troutman acknowledged that there was some overlap between the duties of the CMF I and CMF II classifications. However, Troutman testified that plaintiffs were not regularly participating in the activities performed by their crews, which is a function of the CMF I classification but not of the CMF II classification. Troutman further stated that plaintiffs were performing many of the functions described only in the CMF II classification, which required them to exercise a higher level of independent judgment, such as recommending disciplinary action, coordinating projects with other divisions, and communicating with the public regarding complaints. For these reasons, Troutman believed plaintiffs were performing the duties of the CMF II classification.

The City called two expert witnesses, Tracy Svevad, compensation manager for the City, and Robert L. Ottemann, chair of the management department of the College of Business Administration at the University of Nebraska at Omaha. Svevad held a bachelor's degree in business administration with an emphasis in human resource management and had 12 years' experience in the areas of job classification and evaluation. Ottemann had a bachelor's degree in psychology, a master's degree in industrial psychology, a doctorate in business administration, and a law degree. Ottemann had consulted in the area of job analysis and evaluation for 25 years.

Based on their reviews of the CMF I and CMF II job descriptions, the 1993 job studies performed by the City, and testimony adduced at trial, both Svevad and Ottemann testified that plaintiffs were performing the duties of the CMF I classification. Svevad opined that plaintiffs were not working outside the CMF I classification because they were performing the functions listed on the job description for the CMF I classification. However, Svevad acknowledged that there was some overlap

between the duties of the CMF I and CMF II classifications. Ottemann testified that because plaintiffs were carrying out both "supervisory" and "nonsupervisory" activities and were participating in some of the same activities as their subordinates, they were properly classed at the CMF I level.

On cross-examination, Ottemann testified that there were certain areas of ambiguity in the CMF I and CMF II job descriptions, leaving them open to more than one interpretation. Ottemann further acknowledged that he had graduated from law school and was aware of a legal proposition that when a document has an ambiguity and is susceptible to more than one interpretation, the intention of the drafter is relevant. The City objected to this testimony as not within the expert's area of expertise and beyond the scope of direct examination. The objection was overruled. Ottemann further testified, over objection, that Troutman was the drafter of the job descriptions and that in differentiating between the CMF I and CFM II classifications, Troutman's intent was "[n]ot controlling, but relevant."

As a result of this trial, the trial court entered orders requiring the City to reclassify plaintiffs under the CMF II classification, place plaintiffs on the appropriate pay scale for that classification, account for the wages lost due to the improper classification, and pay plaintiffs those wages for the period beginning February 29, 1993, and until such time as the City reclassified plaintiffs under the CMF II classification. The court also awarded attorney fees to plaintiffs pursuant to the Nebraska Wage Payment and Collection Act. The City's motions for new trial were denied, and a timely appeal followed. Plaintiffs then filed a petition to bypass, which this court granted.

## ASSIGNMENTS OF ERROR

The City contends, restated, that the trial court erred in (1) holding a trial de novo on plaintiffs' claims rather than restricting its review to the record created before the city council; (2) permitting and considering the testimony of plaintiffs' expert witness; (3) permitting and considering certain cross-examination testimony from the City's expert witness; (4) determining that an accounting and payment should be made to plaintiffs for the time period beginning February 29, 1993, and until such

time as plaintiffs were reclassified under the CMF II classification, as such damage award "was given under the influence of passion and/or prejudice"; (5) ordering the City to pay plaintiffs' attorney fees pursuant to the Nebraska Wage Payment and Collection Act; (6) sustaining plaintiffs' motion for new trial and holding the new trial without giving the City adequate time to prepare; and (7) refusing to recuse itself. The sixth and seventh assignments of error are not argued in the City's brief. Errors that are assigned but not argued will not be addressed by an appellate court. *State ex rel. NSBA v. Flores, ante* p. 256, 622 N.W.2d 632 (2001). Therefore, the sixth and seventh assignments of error will not be addressed.

## STANDARD OF REVIEW

■ To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below. *Brandon v. County of Richardson, ante* p. 636, 624 N.W.2d 604 (2001).

■ A trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only when there has been an abuse of discretion. *Snyder v. Contemporary Obstetrics & Gyn.*, 258 Neb. 643, 605 N.W.2d 782 (2000).

■ The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved. *Jameson v. Liquid Controls Corp.*, 260 Neb. 489, 618 N.W.2d 637 (2000).

## ANALYSIS

### Trial De Novo

The City claims the district court erred in holding a trial de novo on plaintiffs' claims rather than applying the standard of review applicable to proceedings in error.

■ Plaintiffs filed their claims against the City pursuant to and in compliance with § 14-804. The filing of a claim pursuant to § 14-804 is a procedural prerequisite to the prosecution of a

wage claim against a city in the district court. *Thompson v. City of Omaha*, 235 Neb. 346, 455 N.W.2d 538 (1990).

Appeal from a denial of a claim filed pursuant to § 14-804 is provided by § 14-813. This section provides in relevant part:

Whenever the right of appeal is conferred by this act, the procedure, unless otherwise provided shall be substantially as follows: The claimant or appellant shall, within twenty days from the date of the order complained of, execute a bond to such city with sufficient surety to be approved by the clerk . . . . It shall be the duty of the city clerk . . . to prepare a complete transcript of the proceedings of the city relating to their decision thereon. It shall be the duty of the claimant or appellant to file a petition in the district court as in the commencement of an action within thirty days from the date of the order or award appealed from, and he shall also file such transcript before answer day. The proceedings of the district court shall thereafter be the same as on appeal from the county board.

Plaintiffs complied with this section by executing a bond with the city clerk on December 13, 1995, and filing a petition and transcript of the city council proceedings with the district court on December 22, 1995. The City claims plaintiffs did not file a transcript of the city council proceedings and, as a result, the court lacked jurisdiction over plaintiffs' appeal. This allegation is not supported by the record. The record shows that plaintiffs filed a transcript in the district court on December 22. Once the petition and transcript have been filed in the district court, § 14-813 then provides that proceedings in the district court shall "be the same as on appeal from the county board." Appeals from a county board are set forth in Neb. Rev. Stat. § 23-137 (Reissue 1997), which states that such appeal "shall be entered, tried, and determined and costs awarded in the manner provided in sections 25-1901 to 25-1937."

■ Neb. Rev. Stat. §§ 25-1901 to 25-1937 (Reissue 1995, Cum. Supp. 1998 & Supp. 1999) provide for reversal or modification by courts sitting in an appellate capacity of judgments and orders entered by lower courts or inferior tribunals. Sections 25-1901 to 25-1908 provide for review in the district court of a decision of an inferior tribunal exercising judicial functions by

way of petition in error. Sections 25-1911 to 25-1929 provide for appeals from the district court to the Court of Appeals or to this court. Sections 25-1930 to 25-1936 are general appeal provisions that are not relevant to the matter at issue in this case. Section 25-1937 provides the procedure for appeal when a statute confers a right to appeal but fails to prescribe the procedure. *Prucha v. Kahlandt*, 260 Neb. 366, 618 N.W.2d 399 (2000). The City claims that §§ 25-1901 to 25-1908, which deal with proceedings in error, were applicable to plaintiffs' appeal in the district court.

The City then asserts that the standard of review for error proceedings should have been applied by the district court, rather than conducting a trial de novo. That standard of review would limit the district court to a determination of whether the inferior tribunal acted within its jurisdiction and whether the inferior tribunal's decision is supported by sufficient relevant evidence. *Crown Products Co. v. City of Ralston*, 253 Neb. 1, 567 N.W.2d 294 (1997). When making such determination, the City argues that the district court's review is limited to the record created before the lower tribunal and that the district court cannot reweigh evidence or make independent findings of fact. See *id.*; *State Farm Mut. Auto. Ins. Co. v. Cheeper's Rent-A-Car*, 259 Neb. 1003, 614 N.W.2d 302 (2000).

Plaintiffs, however, claim that because there was never a hearing before the city council, there was no record to review by error proceedings. Therefore, to apply the standard of review for error proceedings would deny them due process. Plaintiffs contend that under § 25-1937, a trial de novo was appropriate under these circumstances.

As previously stated, § 25-1937 provides the procedure for appeal when a statute confers a right to appeal but fails to prescribe the procedure. *Prucha v. Kahlandt, supra.* This section provides in relevant part:

> When the Legislature enacts a law providing for an appeal without providing the procedure therefor, the procedure for appeal to the district court shall be the same as for appeals from the county court to the district court in civil actions. Trial in the district court shall be de novo upon the issues made up by the pleadings in the district court.

Orders made in the *exercise of judicial functions* by a board or tribunal inferior to the district court are reviewable by proceedings in error. *Emry v. Lake*, 181 Neb. 568, 149 N.W.2d 520 (1967). It is only when the inferior board or tribunal acts judicially that a review by error proceedings is allowed. *Longe v. County of Wayne*, 175 Neb. 245, 121 N.W.2d 196 (1963). See, also, *Kosmicki v. Kowalski*, 184 Neb. 639, 171 N.W.2d 172 (1969); *In re Application of Frank*, 183 Neb. 722, 164 N.W.2d 215 (1969). Thus, in order for §§ 25-1901 to 25-1908 to apply, the city council must have been exercising judicial functions when it denied plaintiffs' claims. See, *Kropp v. Grand Island Pub. Sch. Dist. No. 2*, 246 Neb. 138, 517 N.W.2d 113 (1994); *Thomas v. Lincoln Public Schools*, 228 Neb. 11, 421 N.W.2d 8 (1988).

A board or tribunal exercises a judicial function if it decides a dispute of adjudicative fact or if a statute requires it to act in a judicial manner. *Kropp v. Grand Island Pub. Sch. Dist. No. 2, supra.* "Adjudicative facts" are facts which relate to a specific party and are adduced from formal proof. *Id.* Adjudicative facts pertain to questions of who did what, where, when, how, why, and with what motive or intent. *Id.* They are roughly the kind of facts which would go to a jury in a jury case. *Id.* Whether the board or tribunal was required to conduct a hearing and receive evidence may be considered in determining whether the inferior board or tribunal exercised judicial functions. See *Richardson v. Board of Education*, 206 Neb. 18, 290 N.W.2d 803 (1980). See, also, *Chaloupka v. Area Vocational Tech. School No. 2*, 184 Neb. 196, 165 N.W.2d 719 (1969); *School Dist. No. 23 v. School Dist. No. 11*, 181 Neb. 305, 307, 148 N.W.2d 301, 303 (1967) ("'trial type of hearing'" is ordinarily required for disputes of adjudicative facts). Where an inferior board or tribunal decides no question of adjudicative fact and no statute requires the board or tribunal to act in a judicial manner, such orders are not reviewable by error proceedings. *Thomas v. Lincoln Public Schools, supra.*

In the present case, the city council did not exercise judicial functions in denying plaintiffs' claims. The city council did not decide a dispute of adjudicative fact. No facts relating to the specific parties were adduced from formal proof, and the city council decided no dispute regarding questions of who did what,

where, when, how, why, and with what motive or intent. The city council simply issued a resolution denying the claims based upon a recommendation by the city attorney. Furthermore, the city council was not statutorily required to act in a judicial manner. The city council did not conduct a hearing, did not hear testimony, and did not take evidence. The city council was not statutorily required to do so. The procedure utilized by the city council did not allow for the creation of a record which would provide for meaningful appellate review. Because the city council was not exercising judicial functions, §§ 25-1901 to 25-1908, which provide for review by petition in error, do not apply. Thus, the standard of review applicable to error proceedings does not apply in this case.

Section § 14-813 ultimately directs us to §§ 25-1901 to 25-1937 to provide a procedure for appeal once a claimant has properly filed a petition under § 14-813. Sections 25-1901 to 25-1908 do not provide a procedure for appeal in situations in which the inferior board or tribunal does not exercise judicial functions. Thus, § 25-1937, which provides for a trial de novo in the district court when no other procedure is provided, applies under the circumstances of this case.

Under the circumstances presented, we determine the district court properly held the trial de novo. Because error proceedings were not applicable in this case, a trial de novo as provided under § 25-1937 was appropriate.

### PLAINTIFFS' EXPERT TESTIMONY

The City claims the trial court erred in considering the testimony of plaintiffs' expert witness, Troutman, when Troutman "clearly did not have hardly any experience in the specific area of classification specifications and lacked the educational qualifications and the hands on experience of the [City's] experts." Brief for appellant at 22.

We interpret the City's brief as first arguing that Troutman was not qualified to render expert testimony in this case. However, the record reveals that the City did not object to Troutman's qualifications as an expert. A litigant's failure to make a timely objection waives the right to assert prejudicial error on appeal. *Blue Valley Co-op v. National Farmers Org.*, 257 Neb. 751, 600 N.W.2d 786 (1999).

■ The City then argues that its experts, Svevad and Ottemann, were more qualified than plaintiffs' expert and that the court should have accepted their opinions instead of Troutman's opinion. This argument is similar to that advanced and rejected in the recent case of *Norman v. Ogallala Pub. Sch. Dist.*, 259 Neb. 184, 609 N.W.2d 338 (2000), wherein the defendant argued that its expert was more qualified than the two experts called by the plaintiff. In *Norman*, we recognized that such an argument goes only to the weight of the testimony and that determining the weight that should be given expert testimony is uniquely the province of the fact finder. *Id.* See, also, *Sherrod v. State*, 251 Neb. 355, 557 N.W.2d 634 (1997). The City's assignment of error regarding plaintiffs' expert testimony is without merit.

CROSS-EXAMINATION TESTIMONY FROM CITY'S EXPERT WITNESS

The City next claims the trial court erred in permitting and considering certain testimony elicited by plaintiffs on cross-examination from the City's expert witness Ottemann. The City contends that Ottemann's cross-examination testimony regarding the intention of the person drafting the job descriptions should not have been permitted. The City claims that such testimony was beyond the scope of direct examination and was beyond the area of Ottemann's expertise. At trial, the City objected to the testimony on these grounds.

■ A ruling regarding the extent, scope, and course of the cross-examination rests within the discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *Elstun v. Elstun*, 257 Neb. 820, 600 N.W.2d 835 (1999). On direct examination, Ottemann testified extensively regarding his interpretation of the job descriptions. Ottemann's opinion that plaintiffs were not improperly classified was based in part on his interpretation of the job descriptions. Plaintiffs' cross-examination of Ottemann regarding whether he believed there were certain areas of ambiguity in the two job descriptions was not beyond the scope of direct examination. Such cross-examination was also not outside Ottemann's areas of expertise. Ottemann testified that he had graduated from law school and was familiar with the proposition that the intention of the drafter of a document is relevant in interpreting that document. He then testified that Troutman was the drafter of the job descriptions

and that Troutman's intent was relevant. The trial court did not abuse its discretion in admitting this testimony into evidence.

## DAMAGE AWARD

The City next asserts that the trial court's damage award was "given under the influence of passion and/or prejudice, is not supported by the record and is contrary to law." Brief for appellant at 25. In support of this claim, the City argues that the trial court erred in its assessment of damages by determining that plaintiffs were entitled to damages resulting from the misclassification for the time period beginning February 29, 1993, and until such time as plaintiffs were reclassified under the CMF II classification. The City claims that the damage award should be "limited to the period of time as identified in the plaintiffs' response to interrogatories." Brief for appellant at 26. However, a review of plaintiffs' answers to the City's interrogatories shows that no such limiting time period is identified in those answers. Each plaintiff simply states that he has been performing the duties of the CMF II classification "[s]ince at least January, 1993."

The City also contends in further support of its argument regarding damages that "[f]or the first time at trial, the plaintiffs sought to include among the description of duties they performed for which they were seeking compensation, duties they performed after the job study was completed and after they were reassigned by their superior to each other's previous areas of responsibility." Brief for appellant at 26-27. From this statement, it appears the City is arguing that the trial court erred in awarding plaintiffs damages for the period of time after plaintiffs changed jobs in early 1994. However, the record shows that at all relevant times, plaintiffs were classified under the CMF I classification and claimed they were performing the duties of the CMF II classification, regardless of whether they were assigned to the pavement markings section or parking meter section.

The amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved. *Jameson v. Liquid Controls Corp.*, 260 Neb. 489, 618 N.W.2d

637 (2000). In the present case, the court ordered the City to make an accounting and pay plaintiffs the wages they were due had they been properly classified under the CMF II classification for the time period beginning February 29, 1993, and continuing until such time as the City properly classified plaintiffs and placed them at the proper rate of pay. The evidence supports the district court's finding that plaintiffs were improperly classified for the time period over which the damages were awarded. The City's contention is without merit.

### APPLICABILITY OF NEBRASKA WAGE PAYMENT AND COLLECTION ACT

The City contends the trial court erred in awarding plaintiffs attorney fees pursuant to the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 et seq. (Reissue 1998). Section 48-1231 of the act provides in relevant part:

> An employee having a claim for wages which are not paid within thirty days of the regular payday designated or agreed upon may institute suit for such unpaid wages in the proper court. If an employee establishes a claim and secures judgment on the claim, such employee shall be entitled to recover (1) the full amount of the judgment and all costs of such suit and (2) if such employee has employed an attorney in the case, an amount for attorney's fees assessed by the court, which fees shall not be less than twenty-five percent of the unpaid wages.

The City claims the act is inapplicable in the present case. In support of this argument, the City cites the definition of the term "wages" included in § 48-1229, the definitional section of the act. Section 48-1229(4) provides:

> Wages shall mean compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis. Wages shall include commissions on all orders delivered and all orders on file with the employer at the time of termination of employment less any orders returned or canceled at the time suit is filed.

The City asserts that in order for the act to apply, wages must be "'previously agreed to,'" and that because in the present case "there is no agreement that the plaintiffs are to be paid at the city maintenance foreman II level," the act does not apply. Brief for appellant at 19. In support of its contention, the City cites *Freeman v. Central States Health & Life Co.*, 2 Neb. App. 803, 515 N.W.2d 131 (1994). In *Freeman*, the Court of Appeals determined that the act did not apply to claims bought by two employees against their employer for failure to pay overtime wages. The Court of Appeals determined that because "there was no previous agreement calling for payment of overtime wages," the act did not apply. 2 Neb. App. at 807, 515 N.W.2d at 135.

The situation in the present case is distinguishable from that in *Freeman*. In the present case, although the City did not agree to pay plaintiffs at the rate of pay for the CMF II classification, the City did agree to pay plaintiffs at the appropriate rate of pay for the duties they were performing. There is no dispute that plaintiffs were employees of the City and were subject to the job classification plan and the corresponding pay ranges. The Omaha Mun. Code, ch. 23, art. III, § 23-115 (1980) provides that "the personnel director shall be charged with the responsibility for the proper continued administration of the classification plan so that it will reflect the duties being performed by each employee in the classified service." The Code further provides that "the personnel director shall develop a recommended compensation or pay plan for all positions in the classified service, which shall be based upon the position classification plan and adhere to the general principle of like pay for like work." Omaha Mun. Code, ch. 23, art. III, § 23-141 (1980). These ordinances, as well as the pay rate schedule admitted into evidence, demonstrate that the City did agree to pay plaintiffs at the proper pay range for the work they were performing. The City's contention that there was no agreement between plaintiffs and the City to pay plaintiffs appropriate wages making the act inapplicable is without merit.

## CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.