# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1582

_____

Manuel Acosta, on Behalf of Himself and All Other Similarly Situated
Individuals; Luis Montoya, On Behalf Of Himself And All Other Similarly
Situated Individuals; Martin Hinojosa, On Behalf Of Himself And All Other
Similarly Situated Individuals,

*Plaintiffs - Appellees*,

v.

Tyson Foods, Inc., doing business as Tyson Fresh Meats,

*Defendant - Appellant*.

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: January 15, 2015
Filed: August 26, 2015

_____

Before COLLOTON, BEAM, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Manuel Acosta, Luis Montoya, and Martin Hinojosa sued Tyson Foods, Inc.
on behalf of a class of employees at Tyson's pork processing plant in Madison,
Nebraska. They claim that Tyson failed to pay certain wages due, in violation of the

Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 *et seq*., and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. The district court certified a class consisting of current and former hourly employees of Tyson's Madison facility, who "are or were paid under a 'gang time' compensation system in the Kill, Cut or Conversion Departments." The court then granted summary judgment in favor of the plaintiffs on most liability issues, and awarded nearly $19 million to the class after a bench trial on damages and Tyson's defense of good faith. Tyson appeals the class certification, the summary judgment ruling, and several issues related to the bench trial. We conclude that Tyson is entitled to judgment as a matter of law on both the federal and state claims, and we therefore reverse the judgment.

I.

Tyson owns and operates a pork processing facility in Madison, Nebraska. Hourly production employees at the Madison facility are generally divided into "slaughter" and "processing" departments. Tyson compensates the employees for time spent on the actual production line, known as "gang time." In addition to "gang time," Tyson pays employees for a number of minutes per day, known as "K-code time," for certain pre- and post-shift activity. These activities include the donning and doffing of personal protective equipment and clothing, cleaning and maintaining equipment and clothing, and walking to and from the production line, lockers, and wash stations. The extent of the pre- and post-shift activities required of employees varies based on their job classification.

Before 2007, pursuant to a settlement between Tyson's predecessor and the Department of Labor, all employees who used knives were paid for four minutes of K-code time to compensate for time spent donning and doffing protective equipment particular to knife users. In January 2007, Tyson revised its policy to provide compensation for zero to eight minutes of K-code time to employees depending on

their position. Knife users received pay for four to eight minutes of K-code time. Tyson circulated a memorandum to this effect to all employees.

In 2010, Tyson again revised its compensation policy and circulated another memorandum explaining the changes and clarifying how employees would be paid for K-code time. Effective February 1, 2010, employees at the Madison plant received twenty minutes of paid time, in addition to "gang time," to compensate for pre- and post-shift and break time activity. Some employees received pay for another one to four minutes, depending on the particular equipment required for their position.

The employees brought suit in 2008 under the Nebraska Wage Payment and Collection Act, claiming that Tyson failed to pay them adequately for the pre- and post-shift and break time activities. They also pleaded what is known as a "collective action" under the federal Fair Labor Standards Act for unpaid overtime wages on behalf of themselves and other employees similarly situated. *See* 29 U.S.C. § 216(b). The district court certified the Collection Act claim as a class action under Federal Rule of Civil Procedure 23. As for the FLSA claims, none of the plaintiffs timely filed consent in writing to become a party, pursuant to 29 U.S.C. §§ 216(b) and 256, and the district court never certified a collective action.

Tyson moved for summary judgment on the state law claim, arguing that employees failed to prove an agreement to pay the wages at issue, as required by the Collection Act. The district court rejected Tyson's argument, reasoning that "hourly production employees" can use the Collection Act as a mechanism for collecting any wages that were due and unpaid. The district court granted the employees' cross-motion for summary judgment on all liability issues except for Tyson's defense of good faith under 29 U.S.C. § 259(a). The case proceeded to trial on the good faith defense and damages.

Before trial, Tyson moved to dismiss the FLSA claims brought by Acosta, Montoya, and Hinojosa for failure to file a timely consent to the collective action as required by 29 U.S.C. § 216(b). Tyson also argued that Montoya and Hinojosa should be dismissed as parties for failure to participate in discovery. In a response, Montoya and Hinojosa conceded that their FLSA claims should be dismissed, but asked the court to allow them to proceed as absent class members on the state law claim. The district court denied Tyson's motion to dismiss Acosta's FLSA claim and allowed Montoya and Hinojosa to proceed on the state law claim.

After a seven-day bench trial, the court rejected Tyson's good faith defense and awarded compensatory damages of $6,258,329.74 and liquidated damages of $12,516,659.48, for a total award to the employees of $18,774,989.22. Tyson appeals, challenging the denial of its motion for summary judgment and several issues related to the class certification and trial.

II.

A.

We first address Tyson's contention that the district court should have dismissed Acosta's FLSA claim for failure to file a timely consent. Tyson argues that because Acosta pleaded a collective action under the FLSA, he could not proceed as a party plaintiff to that action without giving timely consent in writing. Acosta did file a consent to join the FLSA collective action on January 1, 2013, but he did so well after the statute of limitations expired in July 2009. *See* 29 U.S.C. § 255(a).

The FLSA sets forth the consent requirement:

> An action . . . may be maintained against any employer . . . by any one
> or more employees for and in behalf of himself or themselves and other

-4-

employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Acosta argues that he was not required to file a written consent, because the FLSA claim was an individual action brought for only himself, not a collective action also maintained on behalf of other employees similarly situated. *See, e.g.*, *Allen v. Atlantic Richfield Co.*, 724 F.2d 1131, 1134-35 (5th Cir. 1984); *Morelock v. NCR Corp.*, 586 F.2d 1096, 1103 (6th Cir. 1978).

We conclude that Acosta was required to file a timely consent, because his complaint alleged a collective action. The complaint was styled as a "Class Action and Collective Action Complaint." R. Doc. 1. The employees brought the claims "by themselves *and on behalf of other similarly situated individuals*." *Id*. (emphasis added). In their prayer for relief, the employees asked the court to "permit this action to go forward as a 'collective action' pursuant to 29 U.S.C. § 216(b)." In a Joint Planning Report filed with the court, the parties specified that any motion for conditional certification of a collective action would be filed by December 15, 2008. The employees never moved for conditional certification, but they did file fifty-five consents to join the FLSA collective action on January 29, 2009. In response, Tyson filed an opposition to conditional certification on February 16, 2009. Acosta never amended his complaint to allege an individual action.

Acosta argues that his complaint "commenced" an individual action, and no collective action was ever commenced because the required consents were never filed. That contention rings hollow when the complaint on file continued to allege a collective action, and Acosta filed consents from other employees several weeks *after* the deadline for a certification motion—a filing that would have been nonsensical if the complaint alleged an individual action. Acosta never made clear that he intended to convert the collective action pleaded in the complaint into an

individual action on behalf of himself alone. Therefore, Acosta was required to file a written consent to proceed as a party plaintiff. Because he failed to do so before the statute of limitations expired, the district court should have dismissed Acosta's claim under the FLSA. *See Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101-02 (7th Cir. 2004).

B.

Tyson also challenges the judgment in favor of the employees under the Nebraska Wage Payment and Collection Act. The Collection Act provides a cause of action for employees to recover unpaid wages. Neb. Rev. Stat. § 48-1231(1). "Wages" are defined as "compensation for labor or services rendered by an employee . . . *when previously agreed to* and conditions stipulated have been met." Neb. Rev. Stat. § 48-1229(6) (emphasis added). In other words, the Collection Act allows an employee to recover only those wages that an employer previously has agreed to pay. *See Eikmeier v. City of Omaha*, 783 N.W.2d 795, 798 (Neb. 2010).

Tyson argues that the employees failed to make a submissible case under the Collection Act. According to Tyson, it was undisputed that Tyson paid wages for gang time plus applicable K-code time, and the employees presented no evidence that Tyson previously had agreed to pay any other wages. Without any unpaid wages to which the employer had agreed, the argument goes, there was nothing for the employees to collect under the Collection Act.

The district court, citing *Hawkins v. City of Omaha*, 627 N.W.2d 118, 130 (Neb. 2001), interpreted the Collection Act differently. The court thought as long as an employer "agree[d] to pay [employees] at the appropriate rate of pay for the duties they were performing," the compensation later adjudged to be appropriate under the FLSA was "previously agreed to" within the meaning of the Collection Act. *Acosta v. Tyson Foods, Inc.*, No. 8:08CV86, 2012 WL 6552772, at *10 (D. Neb. Dec. 14,

-6-

2002) (internal quotation marks omitted). As a result, the court ruled that hourly employees could use the Collection Act as a "mechanism for collecting any uncompensated wages."

In *Hawkins*, two employees of the City of Omaha brought suit under the Collection Act, claiming that they were improperly classified as a City Maintenance Foreman I rather than a City Maintenance Foreman II. 627 N.W.2d at 121. They claimed that though they were both classified as a Foreman I, they were actually performing the duties of a Foreman II and should be paid at that classification's higher rate. *Id.* at 121-22. The City argued that the Collection Act did not apply, because it had not agreed to pay the employees at the Foreman II classification. The Supreme Court of Nebraska ruled for the employees, holding that the City agreed to pay its employees "at the appropriate rate of pay for the duties they were performing." *Id.* at 130.

*Hawkins* is inapposite here. The Nebraska court concluded that the Omaha Municipal Code functioned as an agreement by the City of Omaha to pay municipal employees according to the duties they were performing. Because the Municipal Code provided that the classification plan would "reflect the duties being performed by each employee in the classified service," the court reasoned that the City had "previously agreed to" pay wages to the plaintiffs commensurate with the position of Foreman II. *Id.* (internal quotation marks omitted). The Tyson employees in this case do not claim that they were improperly classified—say, as a general employee rather than as a knife-user whom Tyson had agreed to pay more generously. They argue instead that the amount of time for which they were paid based on their classification was insufficient under the FLSA. That the employees might have been underpaid according to the terms of the federal statute, however, does not establish that Tyson previously had agreed to pay the compensation that they seek, such that the employees may recover under the Collection Act.

Another Nebraska decision, *Freeman v. Central States Health and Life Co.*, 515 N.W.2d 131 (Neb. Ct. App. 1994), illustrates the shortcoming of the district court's approach. In *Freeman*, two employees of Central States brought a claim for unpaid overtime under the Collection Act, arguing that the provisions of the FLSA were implied terms of their employment agreement, and that they were "entitled to receive compensation for all hours worked" under the Collection Act. *Id.* at 133 (internal quotation omitted). The Nebraska Court of Appeals rejected the claim, saying "we have found no Nebraska law, including the Nebraska Wage Act, requiring the payment of compensation for overtime where there is no previous agreement regarding overtime compensation." *Id.* at 134-35. With respect to the FLSA, the court noted that the employees "can file an FLSA claim in a Nebraska state court, see § 216(b), but a party cannot use the Nebraska Wage Act to enforce rights that it may possess under the FLSA." *Id.* at 135. So too here.

The employees advert to a proposition that "'laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms.'" *Stoller v. State*, 105 N.W.2d 852, 858 (Neb. 1960) (quoting *Van Hoffman v. City of Quincy*, 71 U.S. 535, 550 (1866)). This principle has application in cases arising under the Contracts Clause of Article I, Section 10, of the Constitution, for a State cannot grant a valuable right and then impair it by subsequent legislation. *E.g.*, *Wood v. Lovett*, 313 U.S. 362, 370-72 (1941). And there is authority in Nebraska that prevailing judicial constructions or statutory definitions of terms in an insurance policy become part of an insurance contract when it is executed. *Turpin v. Standard Reliance Ins. Co.*, 99 N.W.2d 26, 36 (Neb. 1959); *Reinsch v. Pac. Mut. Life Ins. Co.*, 299 N.W. 632, 635 (Neb. 1941).

But the question here is the meaning of the Nebraska Collection Act and whether a wage is "previously agreed to" if a federal statute requires payments to which the parties did not agree. *Freeman* says that an employee cannot use the

Collection Act to enforce rights that he may possess under the FLSA. The Supreme Court of Nebraska has distinguished *Freeman* on the ground that city ordinances—"unlike the FLSA"—can be the basis of an agreement by a city, but the court has not endorsed the broad proposition urged by the employees here. *Prof. Firefighters Ass'n of Omaha, Local 385 v. City of Omaha*, 860 N.W.2d 137, 143-44 (Neb. 2015); *see Hawkins*, 627 N.W.2d at 958. We conclude that *Freeman* is the best evidence of Nebraska law, and we therefore apply it. *See Swope v. Siegel-Robert, Inc.*, 243 F.3d 486, 496 (8th Cir. 2001).

The employees advance a different rationale for affirming the judgment under the Collection Act: They argue that Tyson did previously agree to pay the wages at issue in this case. Their contention is based on the following documents: a 1998 memorandum from Iowa Beef Processors, Tyson's predecessor, Tyson's 2010 memorandum updating its K-code policy, a document entitled "Team Members' Bill of Rights," a document that appears to be an excerpt from a Tyson human resources manual entitled "Hours of Work and Overtime," and an alleged agreement between Tyson's predecessor and the Department of Labor. These documents, however, are insufficient to show an agreement between Tyson and the employees to pay the wages at issue.

Invoking the 1998 memorandum, the employees focus narrowly on the following language: "Effective immediately IBP is voluntarily implementing a procedure to compensate employees for the reasonable time associated with certain pre and post shift activities." The rest of the document, however, undermines the claim that the memorandum was an agreement to pay the disputed wages, because it specifies that compensable time for pre- and post-shift activities will be limited to four minutes. The memorandum does not establish an agreement to pay for the additional time beyond four minutes that underlies the district court's award under the Collection Act.

-9-

The employees next cite a memorandum that Tyson sent its employees in 2010 detailing changes to its K-code policy. The employees urge that this document is evidence of an agreement that Tyson would "'accurately' compensate employees for the 'reasonable time associated with certain pre and post-shift activities.'" Appellees' Br. 25. This memorandum, of course, could not signify an agreement for the years before 2010 as to which the district court awarded damages. The terms of the memorandum, moreover, did not provide that the company would pay for unspecified "reasonable time." The memorandum explains that Tyson would pay for twenty to twenty-six minutes of K-code time in addition to gang time for all employees, while also stating that Tyson "believes time associated with these activities is paid appropriately or may be *de minimis* and therefore not compensable."

The employees also rely on a document entitled "Tyson Foods, Inc. Team Members' Bill of Rights." They point to Section 4, "Right to Compensation for Work Performed." This section says that "[e]very Team Member has the right to expect payment of wages owed for work performed by the Team Member," and that "Tyson Foods shall pay all wages due to its Team Members." The document specifically states, however, that it "is not a contract of employment," and the "Bill of Rights" thus cannot an establish an agreement to pay particular wages.

Similarly problematic is the employees' reliance on Tyson's human resources manual. The document contains the following "guideline": "Team Members who suffer or are permitted to suffer work, even though the employer has not specifically ordered them to work or have not acted to stop such work, shall be compensated." As with the Bill of Rights, however, the document disclaims any intent to create an agreement to pay wages for a specific amount of time. In a section entitled "PURPOSE," the document provides: "The purpose of this policy is to provide general guidelines for work hours and overtime. It is not the intent of this policy to set forth the work hours, shift starting times, or premium hour payments, as they may vary by department and location for hourly paid team members."

Finally, the employees cite an alleged agreement between Tyson's predecessor and the Department of Labor to compensate employees for donning and doffing activities. This "agreement," memorialized in a letter sent by the Department to Tyson's predecessor in April 1999, likewise does not support the employees' claim. The letter states that "the Department agrees that four minutes per day is sufficient to pay employees for the period October, 1994 to the present." There is no evidence to support an agreement between Tyson and the Department to pay for more than four minutes per day to compensate for the activities at issue in this case.

The employees' claim under the Collection Act thus fails as a matter of law, because they have not presented sufficient evidence that Tyson previously agreed to pay the wages to which the employees claim entitlement. As in *Freeman*, the employees had an option to file a claim under the FLSA, but they "cannot use the Nebraska Wage Act to enforce rights that [they] may possess under the FLSA." 515 N.W.2d at 135-36. Tyson was therefore entitled to judgment on the state law claim. Tyson separately raises substantial issues concerning certification of the class, *see Tyson Foods, Inc. v. Bouaphakeo*, 135 S. Ct. 2806 (2015) (order granting petition for writ of certiorari), but we need not address other assertions of error in light of our conclusions on the points discussed.

*       *       *

For the foregoing reasons, the judgment of the district court is reversed, and the case is remanded with directions to enter judgment for Tyson.

_____

-11-